OPINION OF THE COURT
Wachtler, J.
The defendant has been convicted of attempted grand larceny for demanding money under threat of physical harm in telephone calls recorded by the police. The Appellate Division affirmed the conviction and the defendant appeals. The issue is whether testimony of the victim’s daughter, an acquaintance of the defendant, identifying the defendant as the caller on the recordings, should have been excluded because of allegedly suggestive police conduct at the time of the initial voice identification.
In September, 1976 a man called Mrs. Otti Cohen and demanded that she pay him $3,000. She recognized the voice of the caller as that of Bobby Stephenson, a man who had previously lived with her daughter Ruby. In the initial conversation the caller, apparently inadvertently, acknowledged that he was “Bobby”. In subsequent calls he denied that he was Bobby and threatened harm to the victim’s family if the money was not paid.
Mrs. Cohen notified the police who, with her consent, recorded three calls concerning the money demands. One of *217 the calls was made by the man Mrs. Cohen identified as Bobby Stephenson. Two of the calls were made by a woman the victim was unable to identify.
Mrs. Cohen agreed to pay the money at a place selected during the telephone conversations. Several days after the initial call she arrived at that location in a taxi driven by an undercover police officer and gave the defendant $800 in an envelope. The defendant was then placed under arrest by the police. After her arrest and later at the trial the defendant denied making the calls and denied any knowledge of the scheme claiming that she was simply picking up the money for a friend known as “Jo-Jo”.
That same day the victim’s daughter Ruby was asked to come to the police station to see if she could identify the voices on the recordings. When she arrived she saw the defendant sitting alone at a desk. She was acquainted with the defendant through Stephenson. They had previously socialized on several occasions and had spoken briefly on the telephone. However Ruby did not know that the defendant had been arrested in connection with the scheme. And, although the defendant was then in custody, she was not in handcuffs.
After hearing recordings of the calls Ruby identified the male caller as Bobby Stephenson and the woman as the defendant. She testified to this at the trial over the defendant’s objection.
On appeal to the Appellate Division the defendant contended that the ability of the victim’s daughter to see her at the police station prior to the voice identification was inherently suggestive. Relying on cases condemning suggestive police practices with respect to pretrial visual identifications she contended that the court erred in denying her motion to exclude the testimony concerning the voice identification. The Appellate Division affirmed concluding that under the circumstances, particularly the prior relationship between Ruby Cohen and the defendant, there was no substantial risk of irreparable mistaken identification.
It is now familiar law that the due process clause of the State and Federal Constitutions precludes the police from *218 employing suggestive tactics during a pretrial identification (see, e.g., United States v Wade, 388 US 218; People v Adams, 53 NY2d 241). It is also settled in this State that a violation of the rule may require suppression of testimony concerning the pretrial identification (People v Adams, supra) as well as the witness’s identification of the defendant at trial (compare the Federal rule Manson v Brathwaite, 432 US 98). The prior cases, however, generally dealt with visual identifications and not, as here, with a voice identification. Cases involving allegedly suggestive pretrial voice identifications have been presented to the Supreme Court (see, e.g., Neil v Biggers, 409 US 188, 195) and this court (People v Allweiss, 48 NY2d 40, 49), but neither court has expressly addressed the issue. On principle, however, it would appear that due process should have some application to pretrial voice identifications.
The basic concern with respect to pretrial visual identifications has been to eliminate or minimize the risk of convicting the innocent (United States v Wade, supra; People v Adams, supra, pp 250-251). Experience has shown that the risk is greatest in cases of eyewitness identifications generally, and specifically in those cases where the police have resorted to suggestive visual identifications at the pretrial stage (United States v Wade, supra, p 228). Although voice identifications are less common there is no reason to believe that the risk of mistaken identification is reduced when they have been employed by the police prior to trial. It would seem that the ability of a person to make a reliable identification of another on the basis of his voice is at least as difficult as, and perhaps more difficult than, identifying him on the basis of his appearance.
The District Attorney urges that these concerns are not relevant in cases such as this where the witness and the defendant knew each other prior to the crime. She notes that under similar circumstances we have held inapplicable the statutory requirement that the People give the defendant pretrial notice of a police arranged identification (People v Gissendanner, 48 NY2d 543; People v Tas, 51 NY2d 915). The defendant on the other hand views these cases as relating only to the statutory notice requirement and not to the validity of the identification. This view, *219 however, overlooks the fact that the primary purpose of the notice requirement is to implement the constitutional guarantees by alerting the defendant to the possibility that evidence identifying him as the person who committed the crime may be constitutionally tainted and subject to a motion to suppress (cf. People v Briggs, 38 NY2d 319). Thus the conclusion reached in those cases, that there was no need for the People to serve the pretrial notice, indicates that on the facts presented there was no predicate for suppressing the witness’s identification. Indeed we noted in those cases that there could be no question of “suggestiveness” (People v Gissendanner, supra, p 552), and no “identification” within the meaning of the statute (People v Tas, supra, p 916) in light of the relationship that existed between the defendant and the witness before the crime was committed.
This, of course, is necessarily a question of degree. When a crime has been committed by a family member, former friend or long-time acquaintance of a witness there is little or no risk that comments by the police, however suggestive, will lead the witness to identify the wrong person. This is so at least where there has been no impairment of the witness’s ability to observe and recall the criminal events (cf. People v Hughes, 59 NY2d 523). But in cases where the prior relationship is fleeting or distant it would be unrealistic to ignore the possibility that police suggestion may improperly influence the witness in making an identification. Thus they should avoid conveying their beliefs or otherwise suggesting the defendant’s guilt to the potential witness.
The existing identification procedures were designed for cases involving “eyewitnesses” or persons who actually witnessed the crime as a victim or bystander (see, e.g., United States v Wade, supra, pp 228-229) and may be unsuitable in other contexts. In the case now before us, for instance, Ruby Cohen’s identification was sought not because she had witnessed the criminal events but because she knew the defendant. There was no occasion to hold a “lineup” of tapes including persons other than the defendant simulating the crime. The purpose of asking her to make an identification was not to see whether she could *220 select the “real crime” but to determine whether, when confronted with a recording of the crime, she was able to identify the perpetrator as a person with whom she was familiar. The only apparent risk with such a witness was that the police might suggest that the voice on the recording was that of a particular acquaintance.
As noted, however, it has been found below that this witness was well acquainted with the defendant and could identify her voice on the basis of prior conversations in person and on the phone. It was also found that prior to making the identification the witness was not aware of the defendant’s involvement in the crime and that the witness’s seeing the defendant at the station house did not occur under such circumstances as to suggest that the defendant had been arrested for making the calls. Since these findings support the lower courts’ conclusion that there was no impermissible police suggestion or risk of irreparable mistaken identification, there is nothing further for this court to review (see, e.g., People v Dickerson, 50 NY2d 937).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Jones, Meyer, Simons and Kaye concur.
Order affirmed.