*377 OPINION OF THE COURT
Zelda Jonas, J.
The indictment charges the defendant with the crimes of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree.
Mapp/Wade hearings were held on July 17, 1992 pursuant to stipulations signed by the Assistant District Attorney, Robert K. Fischl, and the defendant’s attorney, Brian J. Carmody, and pursuant to an order issued by the court on April 23, 1992.
The court finds the testimony of the People’s witnesses to be credible, reliable, and not marred by any material inconsistencies.
Burden of Proof
Defendant’s application to suppress tangible evidence places the burden of going forward in the first instance upon the People to show the legality of the police conduct, but the burden of proof remains with the defendant to show that his constitutional rights were violated.
Defendant’s application to suppress identification testimony of a witness places the burden of going forward in the first instance upon the People to show the reasonableness of police conduct and the lack of any undue suggestiveness in a pretrial identification, but the defendant bears the ultimate burden of proving that the procedure was unduly suggestive.
Findings of Fact
Police Officer Eisner, a member of the Narcotics Enforcement Team, testified to a "buy and bust” operation which occurred on September 20, 1991. The purpose of the operation was to involve the purchase by a confidential informant (Cl) of illegal drugs in a high drug sale area. The Cl was wired by the police prior to his participation in the operation ostensibly to record the transaction.
The Cl was taken by the police to a location in Roosevelt, New York, for that specific purpose. At the location, Eisner observed the Cl engage in a brief conversation with a male black who had approached him and who was later identified as the codefendant, Warren Small. Small walked about 20 feet up a driveway to a shorter black male with a goatee who was *378 wearing a sweatshirt with the words “Coca-Cola” imprinted on it and who was later identified as the defendant. After another brief conversation with the defendant, Small handed the defendant the prerecorded “buy” money given to him by the Cl. The defendant then handed an object to Small who, in turn, handed the object to the CL
Eisner radioed his backup team, Police Officers McGinn and Smith, that he had observed a "positive transaction.” McGinn also received a description of the defendant plus the direction in which the defendant was walking. McGinn proceeded to the location and observed the defendant, who substantially matched the description of the perpetrator described by Eisner, and arrested the defendant. McGinn then searched the defendant and recovered from his person a quantity of cocaine and the prerecorded “buy” money. McGinn placed the defendant in a police car and drove to a prearranged location where he stood with the defendant. Police Officer Smith drove by with the Cl who confirmed to him by prearranged signal that the defendant was indeed the perpetrator.
Conclusions of Law

Mapp

Defendant’s motion for an order to suppress the “buy money” and cocaine seized from the defendant is denied.
Police Officer Eisner, a narcotics officer, observed the defendant, Timothy Fair, and the codefendant, Warren Small, engage in a drug transaction with the confidential informant. The defendant was immediately arrested after the transaction, and a quantity of cocaine and prerecorded “buy money” was found on his person. Accordingly, the court finds that there was probable cause to arrest the defendant. There was reasonable belief that a crime had been committed and that the proceeds of the crime were on the defendant’s person (People v McRay, 51 NY2d 594). The warrantless search of the defendant was legally permissible as a lawful search incident to an arrest (New York v Belton, 453 US 454; see, People v Smith, 59 NY2d 454).

Wade

The court finds that the showup identification of the defendant by the confidential informant was confirmatory.
The Court of Appeals has established two kinds of confirma *379 tory identifications. The first is where a police officer’s identification occurs at a time and place sufficiently connected with and contemporaneous to the arrest as to constitute the ordinary and proper completion of an integral police procedure, commonly known as a buy-and-bust operation (People v Roberts, 79 NY2d 964, 966; People v Wharton, 74 NY2d 921; People v Morales, 37 NY2d 262). The second is where a civilian and the defendant are known to one another thereby obviating any concern of suggestiveness (People v Rodriguez, 79 NY2d 445; People v Collins, 60 NY2d 214; People v Tas, 51 NY2d 915).
The Court, in Morales (supra), analyzed the rationale for this distinction by stating that the civilian identifier is often either a victim of the crime or a witness to it who has experienced an unexpected or stress-laden criminal encounter, is without special training, and very possibly finds himself in an environment far from ideal for observation. Thus, the citizen’s best view of the defendant may actually be on the occasion of the identification, a view that will tend to supplant the less secure recollection he had formed at the time of the crime. The result of this may be an irradicable faulty identification which becomes the witness’s standard of comparison for all subsequent views.
On the other hand, a police officer is not the ordinary witness to a crime. His participation is deliberate and planned. He is trained and experienced for precisely such a role. His objective is the detection of criminal activity and the apprehension and conviction of the perpetrator. He is expected to make careful observations of the appearance and activities of the suspect, focused all the more by the consciousness of his future need to make a detailed in-court identification. A second viewing by him would not bear the burden of the caveats of a nonprofessional.
The instant case, involving the use of a confidential informant, does not fit neatly within either of the two categories carved out by the Court of Appeals, and this court is caught between Scylla and Charybdis. There is no indication that the confidential informant knew the defendant at the time of the drug transaction, and the informant is not a police officer trained in narcotics operations. However, confidential informants, in general, have been used by the police in buy-and-bust narcotic operations because of their knowledge of narcotics transactions and their ability to observe based upon personal experience and contacts with the criminal elements of *380 society. The sole reason for using the informant is for purposes of making a "buy” and then being able to identify the seller. Use of a confidential informant on prior narcotic operations, corroborated by observations of a trained undercover narcotics police officer during the buy-and-bust operation, insures the reliability of the informant and the police procedure. (See, People v Rodriguez, 52 NY2d 483, 493.)
In the instant case, the confidential informant, who had been used by the police on prior buy-and-bust narcotic operations, engaged in a face-to-face drug transaction with the defendant, Timothy Fair, and the codefendant. His participation was "deliberate” and "planned”. His objective was the "detection of criminal activity and the apprehension and conviction of the perpetrator.” He was expected to make careful observations of the appearance and activities of the defendant for he knew he would have to identify him as the perpetrator at a later time. That was his job! Based upon his prior experience, he could not be considered a "nonprofessional.”
The transaction was observed by Police Officer Eisner, an experienced member of the Narcotics Enforcement Team. The defendant was immediately arrested after the transaction. The drive-by viewing of the defendant by the confidential informant occurred at a prearranged place and time sufficiently connected and contemporaneous to the arrest itself as to constitute the ordinary completion of an integral police procedure. (See, People v Roberts, 79 NY2d 964, supra; see also, People v Wharton, 74 NY2d 921, supra; People v Morales, 37 NY2d 262, supra.) The identification was made to confirm that the backup team apprehended the right person lest an innocent man be arrested. (See, People v Roberts, supra; see also, People v Wharton, supra.)
Defendant’s motion for an order compelling the confidential informant to testify at the Wade hearing is denied (People v Chipp, 75 NY2d 327).
Based upon the above findings of law and fact, the defendant’s application to suppress the evidence seized from the defendant and to suppress the in-court identification of the defendant by the confidential informant is denied in its entirety.