85 N.Y.2d 218 (1995)
647 N.E.2d 1321
623 N.Y.S.2d 813
The People of the State of New York, Respondent,
v.
Robert Dixon, Appellant.
Court of Appeals of the State of New York.
Argued January 12, 1995
Decided February 23, 1995.
Joel Atlas, New York City, and Philip L. Weinstein for appellant.
Charles J. Hynes, District Attorney of Kings County, Brooklyn (Monique Ferrell, Roseann B. MacKechnie and Richard T. Faughnan of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, SMITH and CIPARICK concur with Judge TITONE; Judge BELLACOSA dissents in a separate opinion in which Judge LEVINE concurs.
*220 TITONE, J.
Defendant was identified as a mugger during a canvassing of the crime scene undertaken by the police and the victim in a patrol car for purposes of identifying the perpetrators. The question we must decide is whether the courts below properly concluded that the allegedly spontaneous nature of an identification rendered a Wade hearing regarding the procedure unnecessary. We conclude that the suppression court's summary denial of defendant's motion for a Wade hearing was improper, since the canvassing was a police-sponsored procedure conducted for the purpose of obtaining an identification. Because the parties' submissions did not establish, as a matter of law, that the identification was free from the risk of police suggestion, defendant was entitled to a Wade hearing to test the propriety of the procedure and the risk of misidentification.

I
At approximately 11:00 P.M. on September 17, 1990, complainant Harold Knowings was robbed by a group of men as he left a grocery store in Brooklyn. The transit police drove the victim through the streets near the crime scene in a marked police van to search for the perpetrators. During this "canvass," the victim pointed to defendant on the street and identified him as one of the robbers. Based on this identification, defendant was immediately arrested and charged with second degree robbery, fourth degree grand larceny and second and third degree assault.
The People notified defendant that the complainant had made a "corporeal non-lineup identification" in the presence of the police. Defendant sought omnibus relief, including a *221 Wade hearing to challenge "the propriety of the identification procedures used" to identify him as one of the perpetrators. Defendant alleged that the identification procedure "utilized by law enforcement officials * * * [was] unfair, creating a substantial likelihood of misidentification." In response to the motion, the People alleged that defendant "was pointed out to the police by the complainant during a canvass of the area surrounding the scene of the crime." Thus, the People concluded that "there was no police-arranged procedure surrounding the identification in this case, and defendant is therefore not entitled to a hearing on the issue."
Citing the People's representation that the complaining witness sua sponte pointed out defendant during an area canvass, the suppression court concluded that the identification was not "police sponsored," and summarily denied the motion for a Wade hearing. At trial, Knowings, the sole identifying witness, testified as to his out-of-court identification of defendant and identified defendant in court as one of the gang of men who attacked him in the grocery store and stole his bag. Taking the stand in his own defense, defendant testified that he was near the scene of the crime at the time of the incident, but that the complainant had mistakenly selected him as one of the robbers. Defendant was convicted by a jury of second degree robbery.
The Appellate Division affirmed the conviction, holding that defendant's motion for a Wade hearing was properly denied "because the complainant's identification of the defendant was made spontaneously and was not the product of an identification procedure arranged by the police." (201 AD2d 581, 582.) Defendant's appeal is before us by permission of a Judge of this Court.

II
Our analysis begins with CPL 710.60, the statute which governs suppression motions and their disposition. Subdivisions (2), (3) and (4) together establish that a court must conduct a hearing and make findings of fact in determining the motion, unless a summary grant or denial of the motion is authorized therein. Generally, a suppression motion may be summarily denied "if no legal basis for suppression is presented or if the factual predicate for the motion is insufficient as a matter of law" (People v Rodriguez, 79 N.Y.2d 445, 452, citing CPL 710.60 [3]).
*222 As a preliminary matter, defendant cannot be faulted for failing to allege in his pleadings particularized facts describing the nature and circumstances of the "point-out" in the police car. Alleging facts to support a motion to suppress testimony concerning an out-of-court identification is a burden that a defendant no longer carries on a motion for a Wade hearing (see, CPL 710.60 [3] [b] [1995]). As this Court has previously explained, the 1986 amendments to CPL 710.60 (3) (b) relieved a defendant of the obligation to plead facts concerning a "previous identification of the defendant by the prospective witness" (CPL 710.20 [6]), "likely for the reason that in many instances a defendant simply does not know the facts surrounding a pretrial identification procedure and thus cannot make specific factual allegations" (People v Rodriguez, 79 N.Y.2d 445, 453, supra). That pleading dilemma can be no more apparent than in this case, where defendant was not present in the police car at the time of the identification and could not know whether the witness' selection of him was due to police commentary or prompting. Indeed, prior to his receipt of the People's responsive pleadings, defendant may have been unaware that he was apprehended as a result of a "canvass." Accordingly, a defendant's failure to plead sufficient facts in support of the motion to suppress testimony of a prior identification is not a proper ground to summarily deny a motion for a Wade hearing (id.).
Turning to defendant's entitlement to a Wade hearing under the allegations before the motion court, we note that the purpose of the Wade hearing is to test identification testimony for taint arising from official suggestion during "police-arranged confrontations between a defendant and an eyewitness" (People v Gissendanner, 48 N.Y.2d 543, 552; People v Newball, 76 N.Y.2d 587, 591). Such suggestion can impair the reliability of the identification and is at odds with the fundamental due process right to a State-sponsored pretrial identification procedure designed to "eliminate or minimize the risk of convicting the innocent" (People v Collins, 60 N.Y.2d 214, 218).
Our precedent does not support a restrictive definition of "police-arranged" procedures (see, dissenting opn, at 228). Drawing the line between State-prompted identification procedures and identifications "resulting from spontaneous and unplanned encounters," the Court stated in People v Newball (76 N.Y.2d 587, 591), that the due process concerns underlying the notice provisions of the Criminal Procedure Law (see, CPL 710.30) *223 are implicated whenever "identification procedures * * * come about at the deliberate direction of the State."
Viewed against this backdrop, we reject the conclusion urged by the People and reached by the Appellate Division that the fact that the complaining witness "spontaneously" pointed out defendant removed the identification procedure  here, the canvassing  from the category of police-sponsored viewings that warrant a Wade hearing. That flawed conclusion results from the Court's confusion of two entirely distinct concepts: witness-initiated procedures and witness-initiated identifications. An identification by a witness may be "spontaneous" in the sense that it is unprompted, yet still be the product of a police-arranged procedure. For example, a victim may reflexively point out the perpetrator during a viewing of a videotape of passersby that was made and supplied by the police (see, People v Edmonson, 75 N.Y.2d 672, 678). In those circumstances, the identification could fairly be characterized as "spontaneous", but no one would dispute that the procedure was "police-arranged." In contrast, a true "spontaneous" procedure would exist where a complainant flags down a police officer and then points to the attackers on the street less than two blocks away (see, People v Rios, 156 AD2d 397, 398).
Here, the canvassing of the crime area in the police car was an identification procedure undertaken at the "deliberate direction of the State." It is undisputed that the victim was escorted to the crime scene by police, indicating that this was a confrontation arranged for the distinct purpose of identifying the perpetrators of the mugging (see, People v Berkowitz, 50 N.Y.2d 333, 338, n 1). This planned identification encounter is distinguishable from those non-police-sponsored identifications resulting from mere happenstance, such as where a witness is present in police headquarters for some purpose other than to effectuate an identification, and by chance views and identifies a suspect who is being processed in another room. Accordingly, based on the pleadings on the motion, the suppression court and the Appellate Division improperly concluded that no Wade hearing was warranted because the procedure employed to gain the identification of defendant was not "police-arranged."
Indeed, to the extent that this Court has recognized exceptions to the general requirement of a Wade hearing, they have been narrowly confined to those circumstances, not present here, where either the prior identification is merely "confirmatory" *224 (see, People v Wharton, 74 N.Y.2d 921, 922), or where "the protagonists are known to one another" (see, People v Gissendanner, 48 N.Y.2d 543, 552, supra). Confirmatory procedures are not subject to testing in Wade hearings because the risk of misidentification is slight in view of the presence of such factors as the identifying officer's expertise and the proximity of the identification to the time and scene of the crime (People v Wharton, 74 NY2d, at 922, supra). Likewise, a hearing is not necessary in the case of an identifying witness who is familiar with the perpetrator because that witness will naturally be "impervious to police suggestion" (People v Rodriguez, 79 NY2d, at 452, supra). No similar policy justification supports a summary denial of a Wade hearing, where, as here, no firm prior relationship is established, because in such cases "it would be unrealistic to ignore the possibility that police suggestion may improperly influence the witness in making an identification" (People v Collins, 60 N.Y.2d 214, 219, supra). That the requirement of a Wade hearing remains the rule, and not the exception, corresponds with the belief that " ` "[t]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other factor" ' " (People v Edmonson, 75 NY2d, at 676, supra).
Without the benefit of a Wade hearing, the courts below could not conclude as a matter of law that the witness' identification of defendant from the police van was spontaneous and not subject to any degree of police suggestion. Indeed, in their responsive pleadings on the Wade motion, the People did not represent that the victim "spontaneously" identified defendant. Rather, they merely asserted that defendant "was pointed out to the police by the complainant during a canvass". Clearly, the possibility that the "point out" was preceded or precipitated by police prompting is not foreclosed. Indeed, the circumstances in this case are not different in principle from a traditional lineup, where the police orchestrate the panel to be viewed and accompany the victim while he or she scans the subjects. In sum, nothing about the procedure employed here rendered the witness "impervious to police suggestion" (see, People v Rodriguez, 79 NY2d, at 452, supra) or obviated the need for the courts to closely examine the circumstances surrounding the identification. Thus, a Wade hearing was required to enable the parties to explore the true nature of the facts surrounding the particular identification *225  circumstances not ascertainable in the absence of a hearing.
Defendant's remaining contention lacks merit.
The case should be remitted to Supreme Court for a Wade hearing to determine whether any police suggestiveness tainted the identification procedure. If so, defendant is entitled to a new trial and such further proceedings as the circumstances may warrant. If the People are successful at the Wade hearing, the judgment of conviction and sentence should be amended to reflect that result.
Accordingly, the order of the Appellate Division should be modified in accordance with this opinion and, as so modified, affirmed.
BELLACOSA, J. (dissenting).
We vote to affirm the order upholding defendant's robbery conviction after a jury trial. Settled precedents and the particular facts, resolved against defendant in both courts below, establish that no Wade hearing should be mandated in this case and all similarly situate street canvass cases (see, United States v Wade, 388 US 218). "[N]o legal basis [or cognizable theory] for suppression is presented" and no sufficient "factual predicate for the motion" to suppress, as a matter of law, is advanced (CPL 710.60; see, People v Rodriguez, 79 N.Y.2d 445, 452; see also, People v Mendoza, 82 N.Y.2d 415, 421). Thus, summary denial is authorized and warranted.
Judge Levine and I respectfully disagree with the majority opinion because it erects a virtual per se pretrial hearing entitlement, contrary to CPL 710.60's express limitations and prescriptions. It does so, moreover, in an entirely new and inappropriate category of law enforcement investigation of criminal conduct and immediate pursuit of perpetrators. Every noncustodial street canvass by police with crime victims will hereafter be presumptively treated as "police-arranged" and identification-suggestive by its nature. Unnecessary, layered hearings, not constitutionally or statutorily required in fairness, merely provide for indirect discovery, complexity and tactical delay and unjust results.
The victim, Harold Knowings, was walking home in Brooklyn at approximately 11:00 P.M. in 1990 when he was approached by defendant, who offered him marihuana. Knowings identified the area as "well lit". Although Knowings tried to rebuff defendant's attempt to sell the drugs, defendant walked along with Knowings for another 10 to 20 seconds *226 until the victim entered a grocery store. When Knowings attempted to leave the store, defendant blocked his path. Knowings reentered the store to telephone the police, but was grabbed by an unknown individual behind the counter and taken outside the store, where he was assaulted and robbed by a group of approximately six individuals, including defendant. Knowings eventually struggled free and fled to a transit police station located approximately two blocks away. The police immediately took Knowings in a marked police vehicle and drove him back towards the crime scene.
The entirety of the original file on this issue shows the following:
A. In defendant's omnibus motion in support of a Wade hearing, defense counsel affirmed only this:
"It is respectfully submitted that the procedures utilized by law enforcement officials to obtain an identification of the defendant were unfair, creating a substantial likelihood of misidentification. This court should therefore order a hearing to determine the propriety of the procedures used. The procedure utilized by police was a one on one situation and the potential for misidentification was extremely great" (defendant's appendix, at 16-17).
B. The Assistant District Attorney affirmed in response:
"The People oppose both defendant's request for relief and a hearing on the issue.
"First, although defendant normally need not be very specific in requesting a hearing to determine this issue, defendant's motion in this case is extremely conclusory and fails entirely to establish a claim.
"Second, the defendant in this case was pointed out to the police by the complainant during a canvass of the area surrounding the scene of the crime. As such, there was no police-arranged procedure surrounding the identification in this case, and defendant is therefore not entitled to a hearing on the issue.
"Accordingly * * * this court should deny both defendant's request for relief and a hearing on the issue."

*227 C. Justice Broomer's pretrial motions' decision concludes:
"II. The defendants' motions for a Wade/Dunaway hearing are denied. The People represent that the complaining witness sua sponte pointed out the defendants to the police during a canvass of the area within minutes of the alleged crime. Since these were not police sponsored identifications, they do no warrant a Wade hearing. Even the serving of CPL § 710.30 notice does not generate a hearing where none is warranted (People v Allen, NYLJ, June 20, 1990, p. 25, col. 5).
* * *
"Although Wade/Dunaway, Mapp and Huntley hearings are denied, they shall be conducted if, at the time of trial, facts appear to be other than stated in the papers (People v Wicker, 72 AD2d 611)."
The Appellate Division, Second Department, affirmed holding that defendant was not entitled to a hearing "because the complainant's identification of the defendant was made spontaneously and was not the product of an identification procedure arranged by the police" (201 AD2d 581, 582).
The street identification at issue by the mugging victim represents a typical, standard and reasonable police-victim prompt effort to act upon the report of a crime and to search for and apprehend a perpetrator (see, e.g., People v Duuvon, 77 N.Y.2d 541; People v Love, 57 N.Y.2d 1023). It was not, as stated by the majority, "conducted for the purpose of obtaining an identification." (Majority opn, at 220.) No one could have known that one of the perpetrators was still at or near the crime scene when the normal investigative canvass was undertaken.
Some such situations could warrant a hearing because they are truly "police-arranged" or might qualify as a suggestive showup if they satisfy the prerequisites of CPL 710.60. That, however, is not this case. This record does not support such a conclusion, and all such encounters are not inherently suspect, qualifying for an automatic pretrial Wade hearing.
The action taken here is, on its face, not a "police-arranged" identification procedure. The law enforcement authorities did not initiate or exert this effort with prior knowledge about this or any targeted perpetrator. They were simply responding *228 immediately to a civilian crime victim's complaint. This is not a situation instinct with suggestibility, such as suggestive or improper bolstering present in showups, lineups and photo identifications. Nor does defendant's motion for the Wade hearing assert anything like that  in essence, his entire claim is reduced to a nonfactual, conclusory "likelihood of misidentification," a very different order of problem from police misconduct of suggestibility. Moreover, this is not the kind of forbidden one-on-one arrangement that we have condemned. Categories and nomenclature should not control these cases. We have to define our terms, especially such important terms of art like these, and then carefully analyze and apply them, case by case, not by per se ukases. In sum, the "police-arranged" and "one-on-one" phrases of art and concepts have been developed in our cases for entirely different purposes, serving different underlying policies from that which occurred here and that which the majority transforms into suspect or suppressed investigatory practices.
"Police-arranged" and "one-on-one" identifications, in the identification semantics sense, are not, in our view, contemplated to be so embracive as to cover all street canvasses and engender such automatic legal consequences (People v Rodriguez, 79 N.Y.2d 445, 449, supra; People v Duuvon, 77 N.Y.2d 541, 546, supra; People v Newball, 76 N.Y.2d 587, 590; People v Chipp, 75 N.Y.2d 327, 337, cert denied 498 US 833). It is not logical, nor is it rooted in sound practicality or tested constitutional theory (see, e.g., Stovall v Denno, 388 US 293). As this Court has stated, the identification statutes were " `a legislative response to the problem of suggestive and misleading pretrial identification procedures' " (People v White, 73 N.Y.2d 468, 474, quoting People v Gissendanner, 48 N.Y.2d 543, 552 [emphasis added]). Our judicial purview, thus, has always spotlighted police conduct to expose the danger or potentiality for suggestiveness lurking in the particular kind and mode of law enforcement practices (see, People v Riley, 70 N.Y.2d 523, 529-531). Historically, the precedents have dealt with lineups (People v Chipp, 75 N.Y.2d 327, supra; United States v Wade, 388 US 218, supra), true showups (People v Riley, 70 N.Y.2d 523, supra) and photo identifications (People v Rodriguez, 79 N.Y.2d 445, supra; Simmons v United States, 390 US 377). By contrast, the law enforcement action here was limited to responding promptly and appropriately to a crime victim's exigent report of a crime committed proximately in time and place. The action is different in kind from the identification *229 techniques, practices and categories that have previously been curtailed or condemned or made subject to per se suppression.
Defendant did not give the trial court in his moving papers actual or even theoretical suggestiveness as a basis for a hearing. Rather, he advanced only a speculative likelihood of misidentification. That is not a cognizable legal or factual predicate sufficient to bar a trial court from exercising its statutorily granted authority to summarily deny a suppression motion under CPL 710.60. The defendant's claim, accepted by the majority, allows defendant to engage in a fishing expedition pretrial hearing in every case merely for the conclusory asking of it (see, People v Mendoza, 82 N.Y.2d 415, 422, 425, supra). That the police provided the transportation, should not, standing alone, create an issue on this record entitling defendant to a pretrial hearing on suggestiveness on some new, presumptively inherently suspicious theory (see, People v Brnja, 50 N.Y.2d 366). This case drives the phrase "police-arranged" inexorably and inappropriately beyond its categorical, functional and particularized purpose.
The present case is also factually and legally distinguishable from People v Newball (76 N.Y.2d 587, supra). In Newball, the defendant objected to the testimony of an undercover officer claiming that the officer had made a previous identification of defendant and the People did not serve a CPL 710.30 notice. The Court held that the identification was the result of a "police-arranged" identification procedure because another officer previously provided the undercover officer with a detailed description of defendant and specifically pointed to the defendant's location. The Court specifically distinguished Newball's identification procedure from other "spontaneous * * * encounters" and analogized the police procedure to a "street showup[ ] made at the behest of the police" (id., at 591).
Not without significance, and unlike Newball, the victim in the present case directed the police back to the nearby location of the crime scene. The police had not been given a description of the defendant, and the victim's identification was a spontaneous, noncustodial street spotting. These factors diminish to legal insignificance, unless something more is shown in defendant's moving papers seeking a hearing, the risks of police suggestiveness, at least as a threshold matter qualifying for an automatic pretrial hearing.
People v Rodriguez (79 N.Y.2d 445, supra) also does not serve as precedential support for the majority's analysis, rule and *230 result. In Rodriguez, the witness identified defendant from a single photo display (id., at 447), a police identification method long recognized by us and the United States Supreme Court as an inherently suggestive tool (see, Simmons v United States, 390 US 377, 384, supra; see generally, Gilbert v California, 388 US 263; United States v Wade, 388 US 218, supra; Stovall v Denno, 388 US 293, supra). We concluded that defendant was entitled to a Wade hearing and rejected the People's argument that the witness was "very familiar" with defendant and thus fell within the narrow exception carried out in People v Gissendanner (48 N.Y.2d 543, 552, supra).
The instant case is critically different from the majority's cited cases and more closely parallels People v Wharton (74 N.Y.2d 921), a case where the Court held that the trial court did not err by denying defendant's motion for a Wade pretrial hearing. In Wharton, the trial court permitted into evidence identification testimony of a trained undercover officer who had observed the defendant during a face-to-face narcotics sale, knowing that the defendant would shortly be arrested, and who viewed the defendant on the street while he was being arrested, previous to the showup. We concluded that the identification made by the officer was not the kind of identification "ordinarily burdened or compromised by forbidden suggestiveness" necessitating a Wade hearing (id., at 922). By parity of reasoning, the victim's identification in this case occurred at a place and time sufficiently connected and contemporaneous to the arrest itself so as to reduce the possibility that an innocent individual was being detained by reason of a mistaken arrest, such that a pretrial Wade hearing should not automatically be afforded (id., at 922-923). This analysis illustrates how divergent the majority's analysis is as to the pretrial hearing rules as applied to this case and as to all the cases that will be forced into its wake. The precedential sweep of the rubric that flows from this case is unwarranted and most unfortunate.
In sum, the Court enacts yet another per se rule which will provide the defendant with a hearing " `merely for the asking' " (contrast, People v Mendoza, 82 N.Y.2d 415, 425, supra, quoting People v Gruden, 42 N.Y.2d 214, 217). The majority has failed to consider the competing policies which undergird CPL article 710 and, by presuming suggestiveness, creates a remedy disproportionate to the evil sought to be prevented. The fundamentally flawed premise of the majority's syllogism is a threshold presumption of official suggestiveness. *231 The rule by statutory prescription in CPL 710.60 still requires some individualized legal theory or fact base, or at least circumstances allowing reasonable inferences of actual or potential suggestive conduct. This case displaces that legislative authorization for judicial officers to summarily deny unsubstantiated suppression motions and substitutes instead conclusory speculation  as occurred here  as a per se basis for a pretrial hearing in every such street canvass identification case (see, CPL art 710).
We respectfully dissent and vote to uphold the conviction.
Order modified by remitting to Supreme Court, Kings County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.