OPINION OF THE COURT
Robert Charles Kohm, J.
Defendant moves to suppress identification and statements, and also challenges his arrest.
A Dunaway /Wade / Huntley hearing was held on September 16, 1998. The sole witness was Detective Miriam Piretti, and her testimony was both credible and comprehensive. The court found the following at such hearing:
On February 11, 1998, Detective Miriam Piretti, 103rd Detective Squad, was on duty in the station house. At 8:00 a.m., she was notified that a man by the name of Jermaine Lynshue had been stabbed earlier that day near Sutphin Boulevard in Queens. The victim was taken to Jamaica Hospital. The detective visited the man who had just undergone surgery for stab wounds. Mr. Lynshue stated that he had got into a car with two friends to go to a store to buy cigarettes. The employee in the store allegedly handed him a bag of marihuana which was refused by the victim, who only wanted cigarettes. The party in the store later identified as Keith Reid, the defendant, then allegedly threw the bag at the victim and shoved him against the wall. A quarrel ensued and the victim left the store.
As he walked out, the defendant came from behind and stabbed him in the neck and back. The defendant fled and the victim was taken to Jamaica Hospital by his friends. Detective Piretti was advised by the complainant that his assailant was a male black, possibly Jamaican, 25 to 30 years old, 5 feet 9 inches, stocky with bumps on his face. The hospital victim did not know the perpetrator’s name but told the detective that he *1002 did know this man for over five years from the neighborhood, having seen him approximately 50 times a year. The victim also knew some of the defendant’s friends. Detective Piretti could obtain no further information. An investigation was made and the detective checked the neighborhood without success. On February 16, 1998, the victim called the detective and said that friends of the defendant had told him that the man who stabbed him was Keith Reid.
A computer check was made and positive information was secured regarding Keith Reid. The detective obtained a computer photo of him and five similar photos of young male blacks. These six photos were put together in a photo array and taken to the victim in the hospital. The complainant immediately recognized subject number five, the defendant, as the man who stabbed him.
Utilizing this additional information, the detective canvassed the area for the defendant, and on March 7, 1998 made contact with the defendant’s father, Philbert Reid. The father did not know where his son presently was.
A week later, the defendant called the detective at the 103rd Precinct. She told the caller that a complaint had been filed against him. The defendant stated that he would visit the detective at the precinct on March 19, 1998. This appointment was not kept.
Detective Piretti called the father’s house on the same day and the defendant answered the phone. He informed the detective that he attempted to file a report on February 11, 1998 and had spoken to a Police Officer Hendricks in the 113th Precinct. Officer Hendricks told the defendant that since the incident happened in the 103rd Precinct, he would have to have the report faxed there to register a complaint. The defendant also told the detective that he had a receipt from the 113th Precinct to verify his attempted report.
Defendant next stated that he would surrender himself on May 22, 1998 and added that he was afraid to turn himself in because he knew the complainant from the area. The defendant advised the detective that the complainant repaired vehicles locally and ended his conversation by repeating he knew the man from the neighborhood.
On the 22nd of May, the defendant failed to surrender himself at the precinct. Detective Peretti, accompanied by two fellow detectives, went to the father’s house. They knocked on the side door and defendant answered. He came outside and *1003 the detectives told him that he was to go to the station house. As he got into the squad car, he was handcuffed and driven to the 103rd Precinct.
During the course of the day, the detective visited the complainant and showed him a single photo of the defendant. The complainant verified that this was the man who stabbed him.
At the precinct, he was given his Miranda warnings at approximately 7:00 p.m. and acknowledged receiving them. He was willing to make a statement and wrote one out, which essentially denied the complainant’s version of what occurred.
Defendant now challenges his arrest, photo identifications and statements.
I
THE DUNAWAY ISSUE
The defendant initially disputes the validity of the arrest at his father’s house. The facts indicate that the complainant was stabbed on February 11, 1998 and taken to the hospital for surgery. While there, the victim described his assailant and said that he knew him from the neighborhood. On February 16, 1998, the complainant named the defendant as his assailant. A subsequent photo identification was made in which the complainant identified the defendant in a photo array.
Based on these facts, the court finds that the defendant was arrested on probable cause. Normally, information provided by an identified citizen is legally sufficient to provide the police with probable cause to arrest (see, People v Moore, 32 NY2d 67; People v Bingham, 176 AD2d 740) and an officer may act upon such a report (see, People v Hicks, 38 NY2d 90, 94). Thus, the detective was simply performing her legal duty by bringing the defendant into custody.
II
THE WADE PHOTO ISSUES
Defendant next attacks the single photograph confirmatory viewing and the identification made from the photo array. The single photo challenge raises a novel issue, namely, what evidence, outside of the complainant’s own testimony, may support a confirmatory identification?
The defendant’s attorney first alleges the single photo identification is invalid since the People have failed to estab *1004 lish any prior familiarity which would show that the defendant and the complainant “are known to one another” (People v Gissendanner, 48 NY2d 543, 552).
Normally, a confirmatory identification gives rise “to a conclusion that, as a matter of law, the witness is so familiar with the defendant that there is ‘little or no risk’ that police suggestion could lead to a misidentification” (People v Rodriguez, 79 NY2d 445, 450). If there is little or no possibility of such suggestiveness, it is obvious that the need for a Wade hearing abates. To establish that an identification procedure is confirmatory, the prosecutor must show the degree or extent of the witness’ prior familiarity.
In the present case, defendant’s attorney stresses the fact that the victim related that he knew defendant from the neighborhood, having seen him approximately 50 times a year for five years. The argument is now raised that this neighborhood relationship is only a bare-boned conclusion on the complainant’s part, unsupported by Rodriguez-mandated background facts.
To support this view, it is alleged the victim did not know his aggressor’s name, residence or family background (see, People v Collins, 60 NY2d 214) and even had to rely on others to learn the name of the defendant. Nor is any occupation given or specific links connecting complainant with his assailant. As for the numerous “seeings”, no information is supplied as to the “duration and nature of the encounters, the setting, the period of time over which the viewings occurred” (People v Rodriguez, supra, at 451).
Basically then, counsel reasons that Rodriguez (supra) requires an answer to the question — how were the parties known to each other — and that mere neighborhood contacts alone do not supply that answer. Therefore, it is concluded, the People have not established that “ ‘suggestiveness’ is not a concern” in this case (People v Gissendanner, supra, at 552) and proved the single photo viewing was confirmatory.
In evaluating counsel’s argument, this court notes that the complainant himself did not testify. Thus, the only witness was Detective Piretti, who related what was told to her by the victim. Concededly, the complainant’s statements gave little information regarding the nature of his prior contacts with the defendant. Normally, this lack of background would negate a confirmatory identification. However, this case is unique in that there is additional evidence from an unlikely third-party source (see, People v Ross, 160 Misc 2d 1, 5) which has *1005 relevance on the issue of prior familiarity. This evidence is the exculpatory statements of the defendant himself who told the detective that he sought to file his own complaint in the 113th Precinct against the victim for what happened on February 11, 1998. Defendant in his phone conversation verified that he knew the victim from the area, recognized him at the time of the incident, and that this man repaired vehicles in the neighborhood. Based upon such additional information and verification of identity, this court finds the evidence now supports the conclusion that Jermaine Lynshue did know Keith Reid from activity in the neighborhood and so there was little or no risk of police suggestiveness (People v Rodriguez, supra, at 450). This being so, the single photo viewing was confirmatory and need not be suppressed.
As for the hospital photo array identification, no evidence has been submitted which would show that the detective’s six computer-generated photographs were suggestive. All the photographs show young male blacks of similar dress and facial characteristics. There was no indication that the detectives emphasized any individual photograph. Also, the victim immediately picked out the defendant, which would indicate a clear recollection. Nor does the fact that the complainant had prior contacts with the defendant taint such identification (see, People v Douglas, 238 AD2d 733, 734, lv denied 90 NY2d 892). In addition, the People’s argument, at the hearing, that the photo array was also confirmatory does not nullify the CPL 710.30 (1) (b) notice which gives sufficient knowledge that this photo array identification would be utilized at trial. Hence, there is no legal basis to suppress the hospital photo array identification.
Ill
HUNTLEY ISSUES
The record establishes that the defendant spoke with Detective Piretti on three occasions and also made a written statement at the station house. The oral contacts were on March 14, 1998, March 19, 1998 and May 23, 1998. The written statement was made on the evening of May 23, 1998. The first oral contact was on March 14, 1998 when the defendant phoned the detective and stated that he would visit the station house on March 19, 1998 to discuss the complaint against him. The second took place on March 19, 1998, when the detective called the father’s house and spoke to the defendant. The final oral *1006 contact was on May 23, 1998, when defendant was arrested at his father’s house. As to these oral statements, it is clear that the March 14,1998 call was purely voluntary on the defendant’s part, since he phoned the detective. So, the statement could not have been “involuntarily made” within the meaning of CPL 60.45 (see also, CPL 710.20 [3]).
The second call to the father’s house was solely for the purpose of giving defendant another opportunity to come to the station house and clarify the situation (see, People v Johnson, 59 NY2d 1014). The detective’s oral conversation was noncustodial. Hence no Miranda warnings were required (see, People v Yukl, 25 NY2d 585).
The final oral statement was made after the arrest. The defendant was taken to the 103rd Precinct and given his Miranda warnings and stated that he understood them. Defendant then made a written statement in his own handwriting. After such statement, he told the detective that he injured his hand during the incident and attempted to file his own complaint at the 113th Precinct.
In light of all of the above, this court finds that the defendant was given his Miranda warnings, understood them, and waived them. This being the case, his statements, oral and written, were voluntary and there is no basis for suppressing same (see, People v Williams, 62 NY2d 285).
Based on the above, the defendant’s application to challenge his arrest, suppress the photo identification and the statements is denied in all respects.