■ The People of the State of New York, Respondent, v Jason Graham, Also Known as Reality, Appellant. [725 NYS2d 145] —Spain, J. Appeals (1) from a judgment of the County Court of Albany County (Breslin, J.), rendered March 13, 1997, upon a verdict convicting defendant of the crime of murder in the second degree, and (2) by permission, from an order of said court, entered April 3, 2000, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction.

After a jury trial in early 1997, defendant was convicted of intentional second degree murder for the shooting death of Demere Hannah on the afternoon of August 22, 1995 in front of 50 Lark Street in the City of Albany. At trial, eyewitnesses testified that defendant was observed firing a gun at Hannah out of the front passenger-side window of a light brown Honda vehicle being driven by defendant's nephew, Lee Johnson. Johnson then backed up the vehicle and defendant was observed shooting Hannah several more times. A passing taxi driver who observed the shooting reported the Honda's license plate number to the Albany police and it was determined that the vehicle, later recovered, was owned by Johnson's mother and regularly driven by Johnson.

Wayne Blanchard and Aleek Young testified at trial that they had observed defendant shoot Hannah out of the passenger side of the vehicle. Blanchard testified that he knew Hannah and Johnson from the neighborhood and he had known defendant approximately 10 to 15 years prior to the shooting; he first contacted police approximately seven months after the shooting—in March 1996 while incarcerated on a parole violation—and negotiated an agreement to testify at trial in exchange for his release to a long-term residential program. Young testified that, shortly before the shooting, he saw defendant—whom he knew from the streets—and Johnson at a nearby store, observed defendant flash a gun and threaten, "I'm going to get one of those Mecc Niggers [a derogatory term referring to African Americans from New York City]." Young agreed to testify at trial in exchange for a deal in which his May 1996 guilty plea to possession of a loaded gun and one-year sentence imposed thereon also satisfied a July 1996 charge of criminal possession of a controlled substance in the third degree.

Also testifying at trial was Jerome Walker, who testified that at approximately 6:00 P.M. on the day of the murder, he,

defendant and a mutual friend* had a conversation at a softball field in which defendant admitted that he shot Hannah from a vehicle being driven by Johnson; defendant later directed a woman to retrieve the gun from his apartment and discussed discarding it. Karim Maye, another witness, testified that two days before the shooting, defendant came to his house and asked for a gun stating that his nephew, Johnson, had been shot in the foot at a local club; Maye told defendant that he did not have a gun, but when he saw defendant later that day at a basketball court, defendant told him that he had obtained what he needed, he knew it was Hannah who had shot Johnson and he was going to "take care of business." The only defense witness called to testify also observed that the shooter was on the front passenger side of the vehicle, but identified Johnson as the shooter.

Defendant now appeals from the judgment convicting him of murder in the second degree and sentencing him to 25 years to life in prison and, by permission, from the denial of his motion to vacate the judgment of conviction and for a new trial based upon, *inter alia*, newly discovered evidence and ineffective assistance of counsel. We affirm in all respects.

Defendant's initial contention is that his CPL 710.20 (6) pretrial motion to suppress Blanchard's in-court identification of him at trial should have been granted on the ground that Blanchard's identification of him prior to trial from a single photograph was unconstitutionally suggestive. County Court conducted a pretrial hearing on the motion at which the People requested that the court invoke the "confirmatory identification" exception—a conclusion that, as a matter of law, Blanchard was "so familiar with the defendant that there is 'little or no risk' that police suggestion could lead to a misidentification"—obviating the need for a *Wade* hearing to explore the suggestiveness of the identification procedures utilized (*People v Rodriguez*, 79 NY2d 445, 450). Notably, "whether the exception applies depends on the extent of the prior relationship, which is necessarily a question of degree" (*id.*, at 450).

In this case, as relevant to this issue, an Albany police detective testified at the suppression hearing that, during a March 20, 1996 prison interview, Blanchard reported that he had seen defendant shoot Hannah several times from the passenger side of the vehicle driven by Johnson; Hannah fell to the ground and the vehicle then backed up and defendant fired seven or eight more shots at Hannah. Blanchard also provided the street

---

* This friend did not testify at trial.

names for Hannah, Johnson and defendant and stated that he had known defendant "over ten years" and that defendant is related to Johnson. Moreover, Blanchard stated that he had been in jail with defendant, apparently after the shooting, and while in jail defendant was telling everyone to call him by a different street name to disassociate himself from this murder. Blanchard's written statement, given to police during the prison interview, indicating that he had known defendant for over 10 years and had been incarcerated with him was received into evidence at the suppression hearing. The detective also testified that on April 23, 1996, while Blanchard was in an interview room to testify before the Grand Jury, Blanchard was shown a single photograph of defendant and asked if it was "Reality" (defendant's street name), the person that he saw shoot Hannah, to which Blanchard replied "yes."

County Court denied defendant's motion to suppress concluding that since Blanchard had previously and without suggestion provided defendant's name and street name, indicated that he knew defendant and Hannah, and stated that he had observed the shooting, the People had established Blanchard's "basis of knowledge," and showing him one picture was not unconstitutionally suggestive. Although the court needlessly focused, in part, on the suggestiveness of the procedure, the record supports the conclusion that the court's ruling invoked the *Rodriguez* exception. Analytically, a *Rodriguez* "confirmatory identification" ruling is that however suggestive or unfair the identification might be, "there is virtually no possibility that the witness could misidentify the defendant" (*id.*, at 450).

Indeed, the People bear the burden of demonstrating that an identification procedure was merely confirmatory (*see, id.*, at 452), an exception which is "narrowly confined" since its invocation obviates the need for CPL 710.30 notice or a *Wade* hearing (*see, People v Gissendanner*, 48 NY2d 543, 552). Although the People are not obligated to call the identifying witness at a *Rodriquez* hearing (*see, People v Espinal*, 262 AD2d 245, *lv denied* 93 NY2d 1017) but recognizing that defendant's right to call the identifying witness at the hearing is limited (*see, People v Chipp*, 75 NY2d 327, 337-339, *cert denied* 498 US 833), the People must develop at the hearing sufficient details of the extent and degree of the protagonists' prior relationship, their encounters, and how they knew one another, so as to provide the trial court with a basis for ruling, as a matter of law, that the witness was impervious to suggestion (*see, People v Rodriguez, supra*, at 451).

Here, we find that the uncontroverted, albeit limited, evi-

dence adduced at the hearing was sufficient to establish that defendant and Blanchard were "long-time acquaintances" (*see, People v Collins*, 60 NY2d 214, 219; *People v Tas*, 51 NY2d 915, 916), whose prior relationship was not "fleeting and distant" (*People v Collins, supra*, at 219) or the result of a brief encounter (*see, People v Newball*, 76 NY2d 587, 591-592). Consequently, as a matter of law, Blanchard was "impervious to police suggestion" in the subsequent photo identification (*People v Rodriguez, supra*, at 452).

Defendant's related claim raised in his CPL 440.10 motion to set aside the judgment is that the People's failure to provide him—prior to the suppression hearing—with Blanchard's history of criminal convictions or "rap sheet" constituted a *Brady* violation. Defendant argued that this evidence demonstrates that Blanchard had been incarcerated for most of the time between 1977 and the 1995 murder, a fact which undermined the People's proof presented at the hearing that Blanchard knew defendant for 10 years prior to the murder, and affected the outcome of the hearing. County Court denied the motion, concluding that since Blanchard did not testify at the suppression hearing, his rap sheet could not have been used for impeachment purposes at that hearing and, further, the rap sheet was not *Brady* material in that it did not negate a long-term relationship between Blanchard and defendant. Notably, defendant utilized the rap sheet at trial to impeach Blanchard's credibility, but never argued that it undermined Blanchard's trial claim to having known defendant for 10 to 15 years.

Under discovery rules, the People were not required to disclose the rap sheet at the pretrial hearing unless Blanchard testified (*see*, CPL 240.44 [2]), but they had to disclose it at trial, as occurred in this case (*see*, CPL 240.45; *Matter of Pittari v Pirro*, 258 AD2d 202, 207, *lv denied* 94 NY2d 755), because Blanchard was called as a trial witness. With regard to the claimed *Brady* aspect of this evidence, defendant never moved to reopen the *Rodriguez* hearing based upon Blanchard's rap sheet, thereby failing to preserve the issue (*see, People v Brown*, 67 NY2d 555, *cert denied* 479 US 1093; *People v Sutherland*, 219 AD2d 523, 524, *lv denied* 88 NY2d 886; *cf., People v Clark*, 88 NY2d 552). In any event, even assuming that Blanchard's rap sheet constituted *Brady* material at the suppression hearing although he did not testify at said hearing and the rap sheet was specifically requested, we find no basis to disturb County Court's underlying conclusion that the evidence, if disclosed prior to the hearing, would not have affected its ultimate decision on the suppression motion (*see, People v*

*Vilardi*, 76 NY2d 67, 77; *cf., People v Geaslen*, 54 NY2d 510, 516; *People v White*, 200 AD2d 351, 353, *lv denied* 83 NY2d 859).

We next turn to defendant's claimed entitlement to a new trial based upon newly discovered evidence (*see*, CPL 440.10 [1] [g]). This claim was premised upon a statement given by Blanchard on October 12, 1995 to an investigator retained by Johnson's attorney, to the effect that Blanchard saw the shooter but did not recognize him beyond knowing that it was not Johnson. This statement was assertedly first disclosed to defendant's counsel after defendant's trial and Johnson's subsequent guilty plea. Upon review, we agree with County Court's conclusion that although Blanchard's statement was apparently unavailable to defendant prior to trial, it does not constitute newly discovered evidence, but is more appropriately characterized as additional and relevant impeachment material on the issue—explored at length at trial—of Blanchard's ability and motive to identify the shooter, which did not create any reasonable probability of a more favorable verdict (*see*, CPL 440.10 [1] [g]; *People v Richards*, 266 AD2d 714, *lv denied* 94 NY2d 924; *People v Vasquez*, 214 AD2d 93, 102, *lv denied* 88 NY2d 943). We reach the same conclusion with regard to the statement provided after trial (in March 1998) by Blanchard's brother claiming that Blanchard had twice told him prior to trial that he did not see who fired the fatal shots.

Finally, defendant contends that he received ineffective assistance of counsel because he was represented at trial by an Assistant Public Defender and the Public Defender's office had represented two of the prosecution witnesses (Walker and Maye) who testified against defendant pursuant to plea agreements, creating a conflict of interest. With regard to Walker, the record reflects that Assistant Public Defender Anthony Maney represented him at his December 1995 parole revocation hearing for which Walker's parole was revoked for 10 months (rather than a possible three years) in exchange for him testifying at defendant's 1997 trial. Defendant was not represented by the Public Defender's office—Assistant Public Defender James Milstein—until April 1996, when defendant was arraigned on a sealed indictment. Milstein, on cross-examination of Walker, fully exposed the consideration that Walker received for testifying against defendant. Also, contrary to defendant's contentions, there is no proof that Milstein was aware at trial of records previously obtained by Maney in his prior representation of Walker which might demonstrate that Walker was actually at work at the time that, as he testi-

fied, defendant confessed to him defendant's role in this murder. Thus, there is no record support for defendant's claim that Milstein possessed, but failed to use, these records in his defense at trial or was affected by a conflict of interest. To the extent that defendant could be said to have raised the issue on his CPL 440.10 motion, we are not persuaded by defendant's claim that Milstein's failure to discover and use this evidence denied him of meaningful representation (*see, People v Baldi*, 54 NY2d 137, 146-147).

With regard to Maye, the record reflects that following his February 1996 arrest for selling cocaine, he was represented by an Assistant Public Defender and provided a statement reflecting his knowledge of Hannah's murder in exchange for a favorable plea agreement in which he was permitted to plead guilty to a misdemeanor and received three years' probation and 30 days in jail. Maye did not testify before the Grand Jury in the case against defendant. When Maye was arrested on first degree robbery and other charges in July 1996, he was represented by retained counsel, who negotiated a plea bargain on those charges—a one-year jail sentence—in return for his testimony at trial against defendant. At trial, Milstein impeached Maye with regard to that deal. A review of defendant's CPL 440.10 motion papers and the entire record reveals that defendant failed to demonstrate that the potential conflict of interest in fact affected or influenced the conduct of his defense by actually operating on defense counsel or his representation of defendant in any respect (*see, People v Jordan*, 83 NY2d 785, 787; *People v Ortiz*, 76 NY2d 652, 656; *People v Recupero*, 73 NY2d 877, 879; *People v McDonald*, 68 NY2d 1, 8; *People v Alicea*, 61 NY2d 23, 31; *People v Pickens [Kamel]*, 229 AD2d 607, 609, *lvs denied* 89 NY2d 865, 866; *People v Dakin*, 199 AD2d 407, *lv denied* 82 NY2d 923; *see also, People v Hritz*, 244 AD2d 230, *lv denied* 91 NY2d 893; *People v Lasage*, 221 AD2d 1006, 1007, *lv denied* 88 NY2d 849).

We have examined defendant's remaining contentions and determine that they are without merit.

Cardona, P. J., Crew III, Peters and Lahtinen, JJ., concur. Ordered that the judgment and order are affirmed.