◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID SANCHEZ, Appellant. [905 NYS2d 692]—

Egan Jr., J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered September 5, 2008, upon a verdict convicting defendant of the crimes of murder in the second degree and criminal possession of a weapon in the second degree.

On the evening of May 30, 2007, the victim was sitting in his

friend Megan Adams' parked vehicle on Stuyvesant Street in the City of Binghamton, Broome County when four individuals—two males and two females—approached the car by foot. The victim exited the car, spoke to the group, and a brief verbal altercation occurred between the victim and one of the men. The victim returned to the car, and Adams drove the vehicle a short way down Stuyvesant Street and parked. Approximately one hour later, while the victim was conversing with several friends outside the parked vehicle, a man rode up to the vehicle on a bicycle, got off and fired two shots, one of which hit the vehicle and the other struck the victim in the chest, inflicting a fatal wound. The shooter then fled the scene on foot. Following a jury trial, defendant was convicted as charged of murder in the second degree (hereinafter count 1) and criminal possession of a weapon in the second degree (hereinafter count 2). Defendant was thereafter sentenced to concurrent prison terms of 25 years to life for his conviction of count 1 and 15 years for his conviction of count 2, with five years of postrelease supervision. Defendant now appeals.

Initially, we are unpersuaded that County Court erred in determining that Derrick Watson's identification of defendant from a police photo array as the shooter was merely confirmatory, thus obviating the need for a *Wade* hearing. A *Wade* hearing may be summarily denied "when the witness is so familiar with the defendant that there is little or no risk that police suggestion could lead to a misidentification" (*People v Carter*, 57 AD3d 1017, 1017 [2008] [internal quotation marks and citations omitted], *lv denied* 12 NY3d 781 [2009]; *see People v Rodriguez*, 79 NY2d 445, 450 [1992]; *People v Allah*, 57 AD3d 1115, 1116 [2008], *lv denied* 12 NY3d 780 [2009]). This type of confirmatory identification exception to the notice and hearing requirements for suggestive pretrial identification "may be confidently applied where the [identifying witness is a] family member[ ], friend[ ] or acquaintance[ ] or [has] lived [with the defendant] for a time" (*People v Rodriguez*, 79 NY2d at 450). It is the People's burden to prove the witness's sufficient familiarity with the defendant at a *Rodriguez* hearing (*see People v Rodriguez*, 79 NY2d at 452; *People v Graham*, 283 AD2d 885, 887 [2001], *lv denied* 96 NY2d 940 [2001]). Factors to be considered include the number of times the witness saw the defendant prior to the crime, the duration and nature of those encounters, time periods and setting of the viewings, time between the last viewing and the crime, and whether the two individuals had any conversations (*see People v Rodriguez*, 79 NY2d at 451; *People v Coleman*, 306 AD2d 549, 550 [2003]).

Watson, an admitted drug user and seller, was a witness to

both the confrontation that occurred between defendant and the victim prior to the shooting and the shooting itself. Watson testified that, prior to May 30, 2007, he lived with defendant and defendant's cousin in the same apartment for one month. During that time, in addition to seeing defendant on the street outside of the home, Watson saw defendant each day, albeit for a limited time period, and they would casually greet each other face-to-face. Watson testified that he saw defendant and spoke to him in passing after they ceased living together, and saw him approximately one week prior to the May 30, 2007 shooting. Notwithstanding testimony that Watson abused drugs and that there was no electricity in the apartment during the time he resided with defendant, the People established that Watson was sufficiently familiar with defendant prior to the May 30, 2007 incident such that a misidentification would be unlikely (*see People v Carter*, 57 AD3d at 1018). Accordingly, we find that County Court properly denied defendant's motion for a *Wade* hearing, since Watson was sufficiently familiar with defendant so "as to be impervious to police suggestion" (*People v Rodriguez*, 79 NY2d at 452).

Turning to defendant's argument that the verdict was against the weight of the evidence, such a review is " 'a two-step approach that requires courts to first determine whether, based on all the credible evidence, a different finding would not have been unreasonable,' and, if that step is satisfied, 'then the appellate court must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Hebert*, 68 AD3d 1530, 1531 [2009], *lv denied* 14 NY3d 841 [2010], quoting *People v Romero*, 7 NY3d 633, 643 [2006] [citations omitted]). "Essentially, the court sits as a thirteenth juror and decides which facts were proven at trial" and, in light of those facts, whether the elements of the crimes charged have been proven beyond a reasonable doubt (*People v Danielson*, 9 NY3d 342, 348-349 [2007] [citation omitted]). Although the appellate court must review the evidence in a neutral light (*see People v Rolle*, 72 AD3d 1393, 1396 [2010]), "[g]reat deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (*People v Bleakley*, 69 NY2d 490, 495 [1987]). While a review of the evidence in this case reveals that a different result after trial would not have been unreasonable, we do not find that the verdict was against the weight of the evidence (*see People v Bleakley*, 69 NY2d at 495; *People v Greenwood*, 24 AD3d 818, 818 [2005], *lv denied* 6 NY3d 813 [2006]). With respect to count 1, the People were obligated to prove that defendant intended

to, and did, cause the death of another person (*see* Penal Law § 125.25 [1]). With respect to count 2, the People were obligated to prove that defendant possessed a loaded firearm with the intent to use the same unlawfully against another person (*see* Penal Law § 265.03 [1] [b]).

At the trial, Adams identified defendant as the individual with whom the victim engaged in the earlier confrontation. Nakia Forbes and Maryan Espinal, the two women present during the first incident, testified that it was defendant who had the confrontation with the victim. Watson testified that he observed this confrontation between the victim and defendant from a distance, and that soon afterwards, defendant "rolled up" to him on a bicycle, displayed a gun and asked him who was down the block. Watson testified that, shortly thereafter, he observed defendant ride down Stuyvesant Street towards Adams' vehicle where the victim was sitting, saw defendant stop at the vehicle, and then he saw two "sparks." Adams testified that defendant rode up to the vehicle on a bicycle; she then heard gunshots, saw the victim fall, and saw defendant run away. George Levy and Khalifa Rahim, who were conversing with the victim outside the parked vehicle immediately prior to the shooting, and Espinal, who was sitting on a nearby porch at the time of the shooting, also testified that they observed an individual on a bicycle pull up to the vehicle's passenger side and then heard gunshots. Rahim testified that the person on the bicycle dropped the bicycle and started shooting. Finally, an inmate housed with defendant after the shooting at the Broome County Correctional Facility testified that defendant admitted that he had been involved in a verbal altercation with the victim and admitted shooting him. While the murder weapon was never recovered and the DNA evidence recovered from the bicycle neither implicated nor excluded defendant, police recovered two expended .22 caliber cartridge casings at the scene and two projectiles—one taken from the victim's body and another imbedded in Adams' vehicle. Medical evidence established that the victim was struck one time in the chest with a bullet, resulting in his death within minutes. Defendant's intent to kill can be inferred from his statement to the fellow inmate and his firing of two shots at close range. In light of this evidence and according deference to the jury's credibility determinations, we do not find that the verdict was against the weight of the evidence.

Finally, we reject defendant's contention that his sentence was harsh and excessive. Based on the nature of the offenses committed and defendant's prior criminal history, we discern no extraordinary circumstances or abuse of discretion warranting a

reduction of the sentence (*see* CPL 470.15 [6] [b]; *People v Sabin*, 73 AD3d 1390, 1391 [2010]; *People v Fairley*, 63 AD3d 1288, 1290-1291 [2009], *lv denied* 13 NY3d 743 [2009]; *People v Minor*, 45 AD3d 885, 886 [2007], *lv denied* 10 NY3d 768 [2008]).

Cardona, P.J., Peters, Spain and McCarthy, JJ., concur. Ordered that the judgment is affirmed.