OPINION OF THE COURT
Kaye, J.
 This appeal centers on the "confirmatory identification” exception to the notice and hearing requirements of the Criminal Procedure Law for suggestive pretrial identification procedures. We conclude that, where a citizen eyewitness claimed to have seen the defendant numerous times in a store, it was error to deny defendant’s Wade hearing motions summarily, because the witness’ assertion did not establish such familiarity with defendant that the danger of police suggestiveness was eliminated as a matter of law.
I.
On August 22, 1986, David Benito — employed as a clerk in the grocery store across the street from his Manhattan apartment — woke up late for work, looked out his fourth-floor window to see if his boss was waving him down, and noticed a group of about seven people gathered in the street below. Two men were arguing. One shoved the other, whereupon the latter drew a gun, shot the first man to death and fled.
Within two hours Benito reported his observations at the local stationhouse. He was shown two or three photographs, but did not recognize any as the assailant. Three days later, on August 25, a detective presented a single photograph to Benito, and he identified the person depicted — defendant—as the gunman.
Defendant was thereafter arrested in an unrelated incident and charged with the August 22 murder. Shortly after indictment, defendant filed a motion requesting a Wade hearing to explore the suggestiveness of the photo showup. The People opposed the hearing, alleging by affirmation that Benito was "very familiar” with defendant from the neighborhood and suggestiveness therefore was not an issue. In support, the People relied on Benito’s Grand Jury testimony, in which he testified that he had seen defendant "[a]t least four dozen times” as a customer in the grocery store. The court summarily denied defendant’s motion.
Some time thereafter, defendant’s investigator contacted *448 Benito. At the conclusion of a pretrial Mapp hearing, defense counsel orally renewed the application for a Wade hearing, stating that he had questioned his client and that his client was "not familiar with” Benito, and moreover that it appeared Benito was a longtime police informant. The People conceded that Benito did not have a "relationship familiarity” with defendant, but claimed that nevertheless, as demonstrated by the Grand Jury testimony, there was sufficient prior familiarity to justify summary denial of the motion. The court agreed.
Defendant later moved a third time for a Wade hearing, supported by his attorney’s affirmation and a memorandum of law. Defendant again denied "personally knowing or having any prior familiarity with the witness,” and added that defense investigators learned that a criminal case pending against Benito had been adjourned in contemplation of dismissal on the day of defendant’s arrest. The memorandum of law distinguished this Court’s confirmatory identification cases. The motion again was summarily denied, and the case proceeded to trial.
At trial, Benito — the sole identification witness — recounted the shooting and made an in-court identification of defendant. In contrast to his Grand Jury testimony, however, Benito testified that he had seen defendant "a few times” prior to the crime as one of the "guys from the block” who "mingled with the fellows.” He also admitted that he was not a friend or acquaintance of defendant. The jury heard testimony about the August 25 photo showup, and the People presented physical evidence connecting defendant to the shooting. Defendant was convicted of second degree murder and weapons possession.
On appeal, defendant argued that the trial court erred in summarily denying his motions for a Wade hearing. The Appellate Division disagreed, holding that Benito’s Grand Jury testimony established that the photo display was "merely confirmatory,” and thus there was no potential suggestiveness in the procedure. We now modify and remit for a hearing.
II.
In criminal investigations, the police employ a variety of identification procedures — including lineups, one-on-one show-ups, photo arrays, and (as in this case) single-photo displays. *449 While such techniques help assure that the right person has been or will be arrested, if tainted by suggestion they can lead to irreparable misidentification. "The influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor— perhaps it is responsible for more such errors than all other factors combined.” (Wall, Eye-Witness Identification in Criminal Cases, at 26; see also, United States v Wade, 388 US 218, 229.)
The legislative recognition of the importance of testing the reliability of identification testimony before trial is codified in CPL article 710 (see, People v Newball, 76 NY2d 587, 590-591; People v Gissendanner, 48 NY2d 543, 552). Under CPL 710.20 (6), a defendant may move to suppress identification testimony on the ground that it is tainted by "an improperly made previous identification.” CPL 710.30 requires the People to inform defendant that they intend to offer identification testimony at trial, putting defendant on notice of the potential need to make a motion to suppress. And CPL 710.60 governs the procedure for initiating the motion, specifying when the court may summarily dispose of such a motion without a hearing.
Beginning with People v Gissendanner (48 NY2d 543), this Court carved out a narrow exception to the notice and hearing requirements of article 710 for suggestive pretrial identification procedures. "In cases in which the defendant’s identity is not in issue, or those in which the protagonists are known to one another, 'suggestiveness’ is not a concern and, hence, [CPL 710.30] does not come into play” (People v Gissendanner, 48 NY2d, at 552, supra [emphasis added]; see also, People v Tas, 51 NY2d 915; People v Collins, 60 NY2d 214).
Though first articulated in Gissendanner, this "known to one another” exception — the "confirmatory identification”* exception — was not applied in that case because identity was *450 not an issue, nor was there a police-arranged identification procedure (48 NY2d, at 552). Our first actual application of the exception was in Tas, where we concluded that there was no CPL 710.30 violation because the victim and the perpetrators "were known to each other,” having resided together as inmates in the same cell tier for at least one month (51 NY2d, at 916 [emphasis added], citing People v Gissendanner).
As we thereafter recognized in Collins, whether the exception applies depends on the extent of the prior relationship, which is necessarily a question of degree. As then-Judge Wachtler wrote:
"When a crime has been committed by a family member, former friend or long-time acquaintance of a witness there is little or no risk that comments by the police, however suggestive, will lead the witness to identify the wrong person. * * * But in cases where the prior relationship is fleeting or distant it would be unrealistic to ignore the possibility that police suggestion may improperly influence the witness in making an identification.” (60 NY2d, at 219 [emphasis added]; see also, People v Newball, 76 NY2d 587, 591.)
A court’s invocation of the "confirmatory identification” exception is thus tantamount to a conclusion that, as a matter of law, the witness is so familiar with the defendant that there is "little or no risk” that police suggestion could lead to a misidentification. This is so because, as a consequence of applying the exception, the defendant will be denied a Wade hearing to explore suggestiveness. In effect, it is a ruling that however suggestive or unfair the identification procedure might be, there is virtually no possibility that the witness could misidentify the defendant.
The exception may be confidently applied where the protagonists are family members, friends or acquaintances (People v Collins, supra) or have lived together for a time (People v Tas, supra). At the other extreme, it clearly does not apply where the familiarity emanates from a brief encounter (see, People v Newball, 76 NY2d 587, 591-592, supra).
Benito’s alleged prior familiarity with defendant falls within these two extremes. It is indeed possible that a store clerk, having seen a customer "four dozen” times, would be immune to police suggestion. It is also conceivable, however, that such a witness could be influenced by suggestiveness to *451 make a misidentification. Without more information, the trial court had no basis for ruling, in essence, that this witness was impervious to suggestion. The court therefore should have granted defendant’s request for a hearing, at least to explore Benito’s alleged prior familiarity with him.
We recently emphasized the importance of adversary testing of claims that an identification was "merely confirmatory.” In People v Williamson (79 NY2d 799, supra), the trial court held a hearing to determine whether a Wade hearing was necessary. The complainant, a victim of a knife-point robbery, testified on direct that she had seen defendant more than 10 times in the grocery store where she worked, and had seen him in excess of 20 times in the neighborhood where they both lived. The hearing court cut off cross-examination and ruled that a photo array was merely confirmatory. We remitted for a new hearing:
"The issue central to the hearing was the extent of the complainant’s prior familiarity with the defendant and that issue became crucial at trial in this single-witness identification case. Thus, the preclusion of an adequate opportunity to cross-examine on that key issue eliminated any supportable basis upon which to find that the photo identification was the product of prior familiarity and, therefore, merely confirmatory” (79 NY2d, at 800-801).
Benito’s Grand Jury testimony was strikingly like the Williamson complainant’s hearing testimony: both were sworn accounts of having seen the defendant on numerous occasions in a grocery store where each respective witness worked, and both assertions were untested by cross-examination. The trial court in Williamson had no basis for summarily concluding that the identification procedure was "merely confirmatory,” and the trial court had no basis for reaching that same conclusion here. As in Williamson, we therefore remit for an evidentiary hearing on this issue.
At a hearing, the court might consider factors such as the number of times Benito viewed defendant prior to the crime, the duration and nature of the encounters, the setting, the period of time over which the viewings occurred, the time elapsed between the crime and the previous viewings, and whether the two had any conversations. Whether Benito told the police prior to being shown defendant’s photograph that he recognized the shooter from the grocery store might also be relevant.
*452 The People bear the burden in any instance they claim that a citizen identification procedure was "merely confirmatory.” The unusual treatment accorded such identifications — no CPL 710.30 notice or Wade hearing is necessary — requires that the exception be narrowly confined to situations where " 'suggestiveness’ is not a concern” (People v Gissendanner, 48 NY2d, at 552, supra). Thus, the People must show that the protagonists are known to one another, or where (as here) there is no mutual relationship, that the witness knows defendant so well as to be impervious to police suggestion.
Contrary to the People’s argument, prior familiarity should not be resolved at trial in the first instance. The Legislature mandates pretrial resolution of the admissibility of identification testimony where it is alleged that an improper procedure occurred (see, CPL 710.20 [6]; 710.60). Moreover, when the defendant’s theory at trial is mistaken identity, the exploration of prior familiarity on cross-examination may actually bolster the People’s case (compare, People v Dodt, 61 NY2d 408, 418).
III.
The People contend that defendant was not entitled to a hearing because, as a pleading matter, he did not create a factual issue as to Benito’s familiarity with him. True, defendant did not deny being seen by Benito four dozen times — that would have been impossible for anyone who had frequented the grocery store or neighborhood; it is also true that defendant did not concede the People’s point. Defendant argues that in this posture, and in view of his specific allegations that he did not know Benito, a hearing should have been held. We conclude that given the facts, a hearing was required before the trial court could rule, as a matter of law, that Benito’s identification was merely confirmatory.
CPL 710.60 governs the procedure for initiating and deciding motions to suppress evidence. It clearly and explicitly provides that the court must hold a hearing unless it summarily grants or denies the motion in accordance with subdivision (2) or (3) of CPL 710.60 (CPL 710.60 [4]; People v Weaver, 49 NY2d 1012, 1013). A summary denial is permitted only if no legal basis for suppression is presented or if the factual predicate for the motion is insufficient as a matter of law (CPL 710.60 [3]; People v Weaver, supra).
As originally enacted, however, the Criminal Procedure Law *453 expressly relieved a defendant of the obligation to plead facts in support of a motion to suppress an involuntary statement (L 1970, ch 996, adding CPL 710.60 [3] [former (b)]). A hearing is thus required "whenever defendant claims his statement was involuntary no matter what facts he puts forth in support of that claim.” (People v Weaver, supra, at 1013.)
In 1986, the Legislature extended this special pleading rule to Wade motions (L 1986, ch 776, amending CPL 710.60 [3] [b]), likely for the reason that in many instances a defendant simply does not know the facts surrounding a pretrial identification procedure and thus cannot make specific factual allegations (see, Preiser, 1986 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, 1992 Pocket Part, CPL 710.60, at 132). The effect of the amendment was to eliminate summary denial of Wade hearings on the ground that defendant had not pleaded sufficient facts.
The People here seek to do just this. Defendant was presumptively entitled to the Wade hearing on alleging that the police display of a single photo to Benito was suggestive. The People then invoked the confirmatory identification exception to the hearing requirement, but did not allege that Benito and the defendant were known to one another; the People merely alleged that the witness had seen defendant numerous times in a grocery store. Defendant responded by specifically denying "personally knowing or having any prior familiarity” with Benito.
To summarily deny a Wade hearing, the trial court had to conclude that, as a matter of law, Benito knew defendant so well that no amount of police suggestiveness could possibly taint the identification. Under the circumstances presented— the People did not allege a mutual relationship, and defendant specifically denied having any familiarity with Benito — the court should not have applied the Gissendanner-Tas exception without first having had a hearing.
Thus, the case should be remitted to Supreme Court for a hearing to determine whether the identification procedure was confirmatory. If, after that hearing, the court concludes that the People have not sustained their burden, a Wade hearing should be held and further proceedings, including a new trial, should be had as the circumstances may warrant. If the court concludes that a Wade hearing is not required, the judgments should be amended to reflect that result.
Accordingly, the order of the Appellate Division should be *454 modified by remitting to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.

 There are actually two very different classes of identifications that have been labeled "merely confirmatory”: those made by an undercover officer in a buy-and-bust operation to confirm that the backup team apprehended the right suspect (see, People v Wharton, 74 NY2d 921, 923), and those by a citizen who knows the defendant (see, People v Williamson, 79 NY2d 799; People v King, 172 AD2d 562). This cáse concerns only the latter situation. In either situation, the label "confirmatory” does not aid analysis and is perhaps more accurately a conclusion that no Wade hearing is necessary (see, People v Gordon, 76 NY2d 595, 601; People v Wharton, 74 NY2d, at 923, supra; id., at 923 [Titone, J., dissenting]).