OPINION OF THE COURT
Gerald Sheindlin, J.
The defendant was indicted for attempted murder in the second degree, assault in the first degree, assault in the second degree and other crimes. The defendant now moves for a full Wade hearing on the grounds that the People did not sufficiently establish the victim’s familiarity with the defendant so as to preclude a full blown Wade hearing. The People contend that the testimony of an individual who knows both the defendant and the victim sufficiently established the victim’s prior familiarity with the defendant.
A pre-Wade (or Rodriguez) hearing was held before this court on July 13, 1993 and July 15, 1993. At the hearing, the People called Detective John Wynne and a civilian witness, Adam Bolder.
FINDINGS OF FACT
The court finds the testimony of Detective John Wynne and Adam Bolder to be trustworthy, consistent and to have the force and flavor of credibility. Detective Wynne testified that on June 21, 1992 he interviewed the victim, Robert Davis, at Jacobi Hospital. Mr. Davis informed Detective Wynne that a man named "Stanley” had stabbed him on June 19, 1992 in the Sears parking lot located at Fordham Road and Park Avenue in the Bronx. Mr. Davis told Detective Wynne that he *3 had seen and worked with Stanley at the Sears department store parking lot every day for three years. Upon further investigation, Detective Wynne learned Stanley’s full name was Stanley Ross. Detective Wynne obtained a photograph of the defendant and placed it in a photo array which he showed to Mr. Davis at Jacobi Hospital. Mr. Davis immediately identified the defendant’s photo as the man who stabbed him. Mr. Davis again told Detective Wynne that he had seen the defendant every day for three years.[1]
Adam Bolder, who did not witness the assault of Robert Davis, testified that he knew both the defendant Stanley Ross and the victim Robert Davis from the Sears department store parking lot.[2] Mr. Bolder knew Mr. Davis for 3Vz to 4 years during which time he had seen Mr. Davis about 3 to 4 times a week. Mr. Bolder knew the defendant for 2Vz to 3 years during which time he had seen the defendant 2 to 3 times a week. Mr. Bolder had seen the defendant and victim speaking to each other once or twice a week for a total of about 15 to 20 times. Mr. Bolder heard them both refer to each other by name and argue during those conversations. Mr. Bolder knew the defendant and victim did not like each other because he had spoken to each of them about their arguments. Mr. Bolder had engaged in about 50 to 60 conversations with the victim. On approximately 6 to 7 occasions, the defendant, victim and Mr. Bolder had engaged in joint conversations.[3] Mr. Davis had shown Mr. Bolder the scar from the assault and had explained how he had suffered it.
ISSUE
The case at bar presents the issue of the admissibility of alternative methods of proof for a Rodriguez or pre-Wade hearing: may a noneyewitness testify as to a victim’s prior familiarity with a defendant to invoke the confirmatory identification exception of CPL 710.30 (1) (b)?
CONCLUSIONS OF LAW
CPL 710.30 (1) (b) requires the People to serve the defendant *4 with notice when they intend to offer "testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such”. When the parties are known to each other, the notice provision does not apply because suggestiveness is not a concern and no "identification” within the meaning of CPL 710.30 has occurred. (See, e.g., People v Tas, 51 NY2d 915 [1980]; People v Gissendanner, 48 NY2d 543 [1979].)
The application of this " 'confirmatory identification’ ” or " 'known to each other’ ” exception "is thus tantamount to a conclusion that, as a matter of law, the witness is so familiar with the defendant that there is Tittle or no risk’ that police suggestion could lead to a misidentification”. (People v Rodriguez, 79 NY2d 445, 450 [1992].) The defendant will be denied a Wade hearing to litigate suggestiveness if the People successfully demonstrate that the identification procedure was " 'merely confirmatory’ ”. (Supra, at 452.) The issue is the degree or extent of the witness’ prior familiarity with the defendant. When the familiarity merely demonstrates brief encounters as opposed to family members, friends or established acquaintances, a pretrial hearing is required before the court can conclude that an identification procedure is merely confirmatory. (Supra, at 451-452.)[4] At the pretrial hearing the "People must show that the protagonists are known to one another, or where * * * there is no mutual relationship, that the witness knows [the] defendant so well as to be impervious to police suggestion”. (Supra, at 452.) Factors in determining whether an identification is confirmatory are the number of times the witness "viewed [the] defendant prior to the crime, the duration and nature of the encounters, the setting, the period of time over which the viewings occurred, the time elapsed between the crime and the previous viewings * * * whether the two had any conversations” and whether the witness told the police prior to any identification procedure that he recognized the defendant from prior interactions. (Supra, at 451.)
*5 In the case at bar, apparently one of first impression, the People sought to satisfy the standards set forth in Rodriguez (supra) with the testimony of a third party in place of the identifying witness.[5] Detective Wynne testified that Robert Davis informed him that Stanley, a man he knew for about three years, stabbed him. Detective Wynne also testified that the victim gave him this information before he conducted any identification procedure. Mr. Bolder testified that he knew the victim for 3Vz to 4 years during which time he saw the victim about 3 to 4 times a week. Mr. Bolder knew the defendant for 2Vz to 3 years during which time he had seen the defendant 2 or 3 times a week. Mr. Bolder had seen the defendant and victim speaking to each other once or twice a week for a total of about 15 to 20 times. Mr. Bolder heard them refer to each other by name and argue during those conversations. Mr. Bolder knew the defendant and victim did not like each other because he had spoken to each of them about their arguments. Mr. Bolder had engaged in about 50 to 60 conversations with the victim. On approximately 6 to 7 occasions, the defendant, victim and Mr. Bolder had jointly engaged in conversations. Mr. Davis had shown Mr. Bolder the scar from the assault and had explained how he had suffered it. Although a novel approach, the testimony presented at the hearing fulfills the requirements set forth by Rodriguez. The testimony delineated the number of times the victim and defendant were seen together, the setting of the encounters, the period of time over which the encounters occurred, the nature of the conversations between the victim and defendant and the fact the victim informed Detective Wynne before any identification procedure that he recognized the defendant from the Sears parking lot. Rodriguez does not require that the prior familiarity be established only by the victim or eyewitness.
Cases following Rodriguez (supra) have insisted on a "ruling based on evidence of specific knowledge” but have found it lacking when the only evidence presented is police testimony that the complainant had told officers he knew the defendant from the neighborhood. (People v Bernhard, 188 AD2d 348 [1st Dept 1992].) In the case at bar, Adam Bolder’s testimony encompassed firsthand knowledge that the victim and defendant knew each other; that they knew each other by name; that they engaged in conversations with one another, and that they did not like each other. The details set forth by Mr. *6 Bolder’s testimony far exceeded a conclusory statement that the victim knew the defendant. It specifically recounted the number of interactions and the applicable time frames.
This court notes that the testimony of Mr. Bolder was not offered to prove the identity of the defendant as the perpetrator of the crime but solely to prove the victim’s prior familiarity with the defendant, to wit: the identity of the defendant as the man whom the victim knew as Stanley. Testimony by noneyewitnesses has been permitted in analogous situations when the noneyewitness does not testify as to the identity of the defendant as the perpetrator of the crime but to the identity of the defendant by name, voice and physical appearance. In People v Collins (60 NY2d 214 [1983]) the daughter of the victim listened to a relevant tape recording and identified the defendant’s voice on it as Diane Collins, someone she knew. The daughter also physically identified the defendant who was present in the precinct. The Court found that the daughter’s identification "was sought not because she had witnessed criminal events but because she knew the defendant”. (Supra, at 219.)[6] In the case at bar, Mr. Bolder’s testimony was sought not because he had witnessed the assault but because he could describe how the victim and defendant knew each other. As the daughter in Collins was used "to determine whether, when confronted with a recording of the crime, she was able to identify the perpetrator as a person with whom she was familiar”, Mr. Bolder was used in the case at bar to determine whether the victim knew the defendant sufficiently well to be impervious to suggestivity. (See, supra, at 220.)
In People v Russell (165 AD2d 327 [2d Dept 1991]), noneyewitnesses who knew the defendant were permitted to offer their opinion as to the defendant’s appearance on a bank surveillance tape. The Court found that the foundation was laid that the opinion was "rationally based upon the perception of the witness (e.g., the extent of the witness’s familiarity with the defendant within a time frame reasonably connected with the date of the crime)” (supra, at 336). Therefore, the Court permitted the testimony because it assisted the jury and its *7 probative value outweighed any prejudice to the defendant. In the case at bar, Mr. Bolder did not offer his opinion as to whether the victim and defendant knew each other but testified as to specific facts, within his firsthand knowledge to establish that the victim knew the defendant. The Russell case is noteworthy in this context because it demonstrates another method of proving identification. The case at bar demonstrates a further and different method for proving prior familiarity between a victim and defendant for the purpose of invoking and proving the "confirmatory identification” or "known to each other” exception to CPL 710.30 (1) (b).
Based on the testimony presented at the hearing, the People have met their burden of proving the victim knew the defendant sufficiently well to be impervious to suggestiveness and to apply the "known to each other” exception. The People have satisfied the requirements of Rodriguez (supra) through the testimony of both Detective John Wynne and Adam Bolder. The photo identification procedure was merely confirmatory in nature and the victim will be permitted to make an in-court identification of the defendant.
Accordingly, the defendant’s motion for a full Wade hearing or to suppress is denied.

. Detective Wynne could not produce the photo array for the hearing. He testified that he gave the photo array to the Assistant District Attorney who wrote the criminal complaint on July 2, 1992 and had not seen it since.

. The defendant, victim and Mr. Bolder directed Sears patrons to empty parking spaces in the lot in exchange for tips.

. The People offered the testimony of Adam Bolder at the hearing because they were unable to locate Robert Davis for the hearing.

. In Rodriguez (supra), the Court of Appeals specifically discouraged trial courts from summary conclusions that identifications are confirmatory based on sworn accounts untested by cross-examination. (See, People v Rodriguez, 79 NY2d, at 451; see also, Preiser, 1992 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 710.30, 1993 Pocket Part, at 133-134.)

. See, supra, n 3.

. The Court noted that the daughter’s prior familiarity with the defendant was of such a degree "that there was no impermissible police suggestion or risk of irreparable mistaken identification”. (People v Collins, 60 NY2d, at 220.) The Court questioned whether the existing identification procedures might not be unsuitable in contexts other than eyewitnesses, victims or bystanders. (Supra, at 219.)