OPINION OF THE COURT
Patricia Anne Williams, J.
In August 1995, the defendant was indicted and charged *500 with murder in the second degree in violation of section 125.25 of the Penal Law in the stabbing death of John Lucas on July 31, 1995. The case was ultimately assigned to Part 49 where it remained until June 24, 1998 when it came before this court Part for a hearing pursuant to People v Rodriguez (79 NY2d 445 [1992]) to be followed by trial. After trial the defendant was acquitted of all charges pending against him. Defense counsel now submits a voucher in the amount of $11,580 representing 177 hours of in-court time (payable at $40 per hour) and 180 hours of out-of-court time (payable at $25 per hour).
The defense put forward was aggressive and vigorous. Moreover, there is no doubt that the defense counsel obtained an excellent result for his client by obtaining a complete acquittal on an indictment which charged him with one of the most serious crimes in our Penal Law. However, the issue for this court is the time spent in excess of the statutory limits and the manner in which it was spent. For instance, the single hearing in this case was solely for the purpose of determining whether a witness had a basis in his prior knowledge of the defendant for being able to identify him at trial. However, that hearing consumed some two full days (stretched out over three) of court time. The witness ultimately did identify the defendant at trial. Similarly, the case was described to the court by the parties as likely to consume two (or three) weeks of court time. In fact, a full month was consumed in this trial — which was not held on Fridays by reason of the defendant’s claim of religious observance on that day. The extended nature of both the hearing and trial was due in large part to the actions of defense counsel. For these reasons, this court has authorized only two thirds of those hours of in-court time claimed for the hearing and trial.
DISCUSSION
The Payment Scheme of the County Law
Section 722-b of article 18-B of the County Law governs the compensation and reimbursement of assigned counsel and provides in relevant part as follows:
“All counsel assigned in accordance with a plan of a bar association conforming to the requirements of section seven hundred twenty-two * * * shall at the conclusion of the representation receive compensation at a rate not exceeding forty *501 dollars per hour for time expended in court * * * and twenty-five dollars per hour for time reasonably expended out of court, and shall receive reimbursement for expenses reasonably incurred * * * Where a defendant is charged with one or more other felonies [other than one punishable by death], compensation shall not exceed one thousand two hundred dollars * * *
“In extraordinary circumstances a trial or appellate court may provide for compensation in excess of the foregoing limits”.
As this court noted some 11 years ago in People v Savanoli (NYLJ, Mar. 16, 1993, at 22, cols 2, 3), while “it was never intended that the attorneys constituting such a panel would have such work as their main source of income” and therefore “it was never intended that the State would establish fees for such counsel which would be comparable to those set by the private bar”, that has turned out not to be the case. That is to say, the fact is that the need for the services of the Bar to supplement those of the Legal Aid Society (and now such entities as the Bronx Defenders) has increased enormously since the institution of the panel system some 32 years ago.
It is also quite clear that by reason of that inability or unwillingness to recognize the realities of the assigned counsel system, there has been no realistic fee schedule established. Thus, for at least the last decade, the uniform complaint throughout the country has been that the levels of compensation paid to such counsel by the State are so low as to be unconstitutional. (See, People v Savanoli, supra; Jewell v Maynard, 181 W Va 571, 383 SE2d 536 [1989], and cases cited therein.) Indeed, the Jewell court cited approvingly language used by the Supreme Court of Kansas in State ex rel. Stephan v Smith (242 Kan 336, 383, 747 P2d 816, 849 [1987]) where it said: “The State also has an obligation to pay appointed counsel such sums as will fairly compensate the attorney, not at the top rate an attorney might charge, but at a rate which is not confiscatory, considering overhead and expenses.” (Emphasis added.) Clearly in a city such as New York City where overhead and expenses are, without a doubt, greater than those elsewhere in the State by in some cases probably several multipliers, when reviewing a voucher, courts should clearly consider such facts. Moreover, part of the reasonable consideration when reviewing vouchers of assigned counsel, is the fact that in this great city, electricians and plumbers routinely require payment of twice the in-court hourly rate permitted *502 under the plan merely to enter one’s home and determine the nature of the problem.*
Thus while the requested compensation in the instant case exceeds the maximum permissible statutory amount by a factor of almost 10, this court must consider both the low rates of reimbursement authorized as well as the overhead and expenses occasioned simply by virtue of the location of counsel’s practice as being in New York City. Certainly, courts routinely ignore the statutory maximum and simply authorize the payment of whatever sum is represented by the total number of hours spent multiplied by the appropriate hourly rate. The usual rationale for such a procedure is that the amount in excess of the statutory maximum represents “a reasonable supplement to compensate counsel for extra time spent beyond his control.” (See generally, People v Walker, 135 Misc 2d 370, 374 [Sup Ct, Bronx County 1987].)
In seeking precedent in this area, the court was able to find only two other cases which have dealt with this issue in the last decade (apart from its own decision in People v Savanoli, supra): People v Brisman (173 Misc 2d 573 [Sup Ct, NY County 1996]) and People v Sinkler (157 Misc 2d 103 [Sup Ct, Monroe County 1993]). Neither of those cases deals with the issue before this court. In People v Brisman (supra), the court utilized a comprehensive statutory and decisional analysis in support of its grant of an enhanced in-court fee of $75 per hour. In confirming its decision that this was an appropriate rate, the Brisman court noted that counsel had been assigned to represent a defendant charged in four separate indictments with two murders, three attempted murders, multiple additional violent felony offenses and weapons charges as well as a violation of probation on a previous case. In People v Sinkler (supra), the court took a different approach than simply approving the amount requested as representing “extraordinary circumstances” under the statute. Thus, the Sinkler court created a mechanical system whereby it assigned a percentage of 20% to be applied to the amount claimed in excess of the statutory maximum of $1,200. Thereafter, a figure of $100 was assigned to each of the factors set forth in People v Walker (supra) and People v Perry (27 AD2d 154 [1st, 2d Depts 1967]) and as added to with respect to the particular case.
As in the Walker case (supra), after applying the relevant factors for considering whether or not extraordinary circum *503 stances exist upon which to predicate compensation in excess of the statutory maximum, this court has determined that the appropriate result in the instant case is not to simply approve the total hours requested. In explaining its recourse to a fairly arbitrarily assigned numerical system, the court in People v Sinkler (supra, 157 Misc 2d, at 106) noted, “Because the assigned attorney has no method of redress in the event he is dissatisfied with the allowance approved by the trial court * * * and because the converse is true in that there is no mechanism to check the trial court’s discretion * * * it is imperative that the trial court’s determination be a fair one.” (Citations omitted.) Thus, this court has chosen to issue this opinion in explaining its ultimate decision on counsel’s application which is granted, but in a modified form.
The Representation in the Instant Case Prior to its Assignment to this Part
Pursuant to the 18-B plan, current counsel was assigned to the instant case and made his first appearance in connection therewith on August 11, 1995. Almost exactly three years later, on July 29, 1998, the defendant was acquitted of all charges. During that three years’ representation which excluded the hearing and trial before this court, a total of 117V2 hours was expended in both in- and out-of-court time. That representation was conducted before another court Part. However, a brief review of the broad details of that representation as they appear in counsel’s moving affirmation is revealing.
The indictment was filed on August 23, 1995 and the defendant was arraigned thereon on August 31, 1995. The case was thereafter assigned to Part 49 for all purposes. Within less than two weeks of the first appearance in that Part, defense counsel filed a standard omnibus motion, seeking in relevant part, a review of the Grand Jury minutes by the court, and suppression of all statements attributed to the defendant as well as any in-court identification of him. Seven weeks later, the People responded to the motion. Within two weeks thereafter, on December 13, 1995, the court granted Huntley /Wade hearings. Those hearings were never held.
For the first 15 months of the life of this case, from August 1995 until November 1996, there were 11 court appearances for a total of 12 hours or approximately one hour per appearance. Over the next 13 months, from November 1996 through December 1997, there were an additional nine appearances for a total of 12 hours or approximately a little over one hour per *504 appearance. During the final six months prior to the appearance of this case before this court Part, from January through June 1998, there was a total of 10 appearances for a total of 31V2 hours, or roughly three hours per appearance.
Thus, at the time that this case first appeared before this court a total of 55V2 hours had been spent in court over a period of some 34 months. Yet the hearings that had initially been ordered had not been held. Apparently, however, during that time period the People either withdrew statement and identification notice or defense counsel withdrew his application for a hearing since none was ever held and the case appeared before this court with only a Rodriguez hearing pending.
During that same total period of time a total of 62 hours was charged as out-of-court time, 11 of which were spent on legal research. Accordingly, at the time when this case was sent to this court Part for hearing and trial, counsel had already billed some $3,762.50 or three times the statutory maximum for such representation. This court is cognizant of the fact that many cases “age”, as it were, before disposition — with defense counsel being required to make appearance after appearance with no actual discernible progress being made in the case. Moreover, this case spent the overwhelming majority of its life in another Part where the time spent is simply not subject to analysis by this court. Based upon these factors, this court takes no position save to approve the amount requested as incurred over that period in full.
The Rodriguez Hearing and the Trial
As indicated, the case came in before this court for a hearing pursuant to People v Rodriguez (79 NY2d 445, supra) on June 23, 1998. It was anticipated by the parties that the trial would take two to three weeks to try. In point of fact, the case took a total of five weeks to be completed. The Rodriguez hearing alone consumed two more or less full days extending over a three-day period. A pretrial conference regarding the admissibility of various photographs, slides and a videotape also consumed a day. Similarly, jury selection consumed 4V2 days. At least three mistrial motions were made, all of which were denied and concerning one of which this court issued a written decision finding that it was frivolously made.
In sum, the length of both hearing and trial were largely due to counsel’s unreasonable behavior. Thus, virtually every day would begin with an application for some relief by counsel— *505 most of which were baseless. If permitted to approach sidebar (a practice which the court soon declined to permit) counsel engaged in “lengthy, unreasonably verbose, and redundant arguments even in the face of repeated admonitions by the court”. (See, People v Walker, supra, 135 Misc 2d, at 371.) Indeed, the Walker court might just as well have been sitting on this case, since its description of counsel’s antics there is identical to those of counsel in the instant case. Thus, as in Walker, “cross-examination by defense counsel was an ordeal. When objections were sustained, the questions were repeated in an altered form. When further objections were sustained, the questions were rephrased, repeatedly.” (People v Walker, 135 Misc 2d, at 372.) In the instant matter, it was often the very same question which was put repeatedly to the witness and objections thereto repeatedly sustained until the court finally directed that counsel move on. Invariably, and despite the court’s admonition, after two or three questions posed in a different area, the self-same question as to which objections had been made and sustained would be posed to the witness yet once again. Indeed, counsel insisted not only upon recross of every witness but a re-recross as well. In short, counsel was not satisfied unless the last question posed to a witness was by him. Thus virtually every witness was subjected to unreasonably lengthy questioning.
However, the Walker court was careful and thoughtful in its exposition of the issue of how to assess appropriate compensation for 18-B counsel when the request exceeds the maximum limits allowable by statute. Thus, the court adopted the list of factors to be considered as set forth in People v Perry (27 AD2d 154, supra):
“1) The complexity of the issues;
“2) The seriousness of the charges;
“3) The extent to which counsel was compelled to expend additional hours due to circumstances beyond his control;
“4) The extent to which additional time was unnecessarily and unreasonably expended”. (People v Walker, supra, 135 Misc 2d, at 373.)
In addition, the court suggested that the following additional factors were also worthy of consideration, “but to a far lesser degree”:
“1) Actual hours expended;
“2) Results achieved;
“3) Experience and stature of counsel at the Bar;
*506 “4) The cost of such services if provided by private counsel.” (People v Walker, supra, 135 Misc 2d, at 373.)
It is this court’s belief that in the appropriate case, as in the instant matter, an additional factor should be considered as an offset to any such calculation, and that is the degree to which unreasonable delay was due to causes other than the behavior and trial conduct of assigned counsel. In this case, this court can state the applicable concerns no better than by quoting the Walker court almost in full on this point.
“In the judicial process, there is a relationship between court and counsel which must be maintained with the highest degree of integrity and respect. This relationship is a matter of public concern, for the public has an interest not only in the principle of justice but in the manner in which we strive to achieve that high ideal * * *
“The court is mindful that competent counsel must not be discouraged from agreeing to represent indigent defendants. However, the court is also charged with the duty of controlling heavy calendars and preventing abuse of the public trust. It should thus be readily apparent that a decision to reduce * * * the amount claimed by assigned counsel, is only reluctantly and sparingly made. Nevertheless, it should be clearly understood that, in appropriate circumstances, such a decision will be made.” (People v Walker, supra, 135 Misc 2d, at 373-374.)
Taking all of the foregoing into consideration, compensation to assigned counsel in this matter is limited to the full amount requested for all time spent prior to the assignment of this case to this court Part. For the five weeks that this case was in this Part, compensation to assigned counsel in this matter for in-court time is decreased by one third. That amount represents, in this court’s opinion, a reasonable supplement to compensate counsel for extra time spent beyond his control considering all the factors as suggested above. The precise sum shall be endorsed upon the vouchers submitted by counsel, and may be retrieved from the clerk of the court.

Not to mention the hourly rates charged by such relative supernumeraries as tennis pros and fitness trainers.