# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

170
KA 13-00392
PRESENT: CARNI, J.P., LINDLEY, DEJOSEPH, NEMOYER, AND TROUTMAN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

                    V                              MEMORANDUM AND ORDER

KEVIN REEVES, DEFENDANT-APPELLANT.

---

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (PHILIP ROTHSCHILD OF COUNSEL), FOR DEFENDANT-APPELLANT.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JAMES P. MAXWELL OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Onondaga County Court (Donald E. Todd, A.J.), rendered January 11, 2013. The judgment convicted defendant, upon a jury verdict, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree.

It is hereby ORDERED that the case is held, the decision is reserved and the matter is remitted to Onondaga County Court for a hearing pursuant to CPL 710.60 (4).

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]) and criminal possession of a controlled substance in the third degree (§ 220.16 [1]). Viewing the evidence in light of the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we reject defendant's contention that the verdict is against the weight of the evidence (*see generally People v Bleakley*, 69 NY2d 490, 495).

We agree with defendant that he was entitled to a pretrial hearing to test the reliability of the police identification of him as the seller of cocaine to an undercover police officer during a transaction that occurred more than a year prior to defendant's arrest. Pursuant to a meeting arranged by a confidential informant, two undercover officers from the Onondaga County Sheriff's Department met with defendant on April 25, 2011 to purchase cocaine. Approximately five minutes prior to the meeting, one of the officers (hereafter, undercover officer) viewed a photograph allegedly depicting defendant. After the transaction, the undercover officer returned to the Sheriff's Department and reviewed the photograph again. The incident report completed by the undercover officer the day after the transaction contained the entry "UNKNOWN" for the

suspect's name.  In a subsequent, but undated "Narrative Supplement" report, the undercover officer described the use of the single photograph to identify defendant before and after the transaction. Defendant was not arrested until more than a year later, on May 3, 2012, by a police officer from a different police agency (arresting officer), i.e., the Syracuse Police Department.  Importantly, the arresting officer had not participated in the undercover transaction and made the arrest solely on the basis of an outstanding warrant.  On the arrest report, in the box reserved for "ID Procedure," the arresting officer checked "None."  No postarrest identification procedures were conducted by the People prior to trial.  Unlike the typical "buy and bust" operation with a postarrest station house identification, the undercover officer made no effort to "assure himself that [the Syracuse Police Department] had arrested the man he intended" (*People v Morales*, 37 NY2d 262, 271).

Defendant's pretrial motion for discovery demanded "[a]ny photograph . . . purporting to contain the likeness of a human being shown to [prospective] witnesses."  The People's response stated "None known to exist."  The single photograph allegedly used by the undercover officer to identify defendant has not been produced by the People.

Defendant moved to suppress the People's identification testimony and, in the alternative, requested a hearing to determine the admissibility of any such evidence.  County Court summarily denied suppression and defendant's request for a *Wade* hearing on the ground that the identification procedure was "confirmatory."

We begin by recognizing that the primary concern with police identification procedures is that they should provide "assurance that an innocent person [has not been] detained by reason of a mistaken arrest" (*People v Wharton*, 74 NY2d 921, 923).  Thus, a contemporaneous postarrest station house viewing or prompt on the scene confrontation generally provides such assurance (*see id.* at 922-923).  Here, following the drug transaction, the undercover officer did not observe defendant again until the trial, which was approximately a year and a half after the transaction.  That lapse of time is in stark contrast to the typical situation where an undercover officer identifies the arrestee at the police station contemporaneously with the drug transaction (*see e.g. People v Irving*, 162 AD2d 280, 280-281, *lv denied* 76 NY2d 940).

While we recognize that a "*Wade* hearing" is often linked, nearly exclusively, with the concept of "suggestiveness," we conclude that a defendant is entitled to CPL 710.30 (1) (b) notice and the opportunity to move to suppress identification testimony pursuant to CPL 710.60 in order to test the *reliability* of such testimony (*see People v Mato*, 83 NY2d 406, 410).  While "suggestiveness" may play an important role in the reliability analysis, it is not the exclusive criterion.  The list of criteria involved in making a reliability determination may include, but is not limited to:  the lapse of time between the criminal transaction and the arrest, the opportunity to observe the suspect during the transaction, the duration of the interaction, and

the facts and circumstances of the interaction with the suspect.  It is well settled that "the mere labelling of an identification as 'confirmatory' will not obviate the need for *Wade* hearings. Case-by-case analyses of the facts and circumstances in each case remains necessary" (*id.* at 410-411).  "Comprehensive analysis, not superficial categorization, ultimately governs" (*People v Gordon*, 76 NY2d 595, 601).

Under the circumstances presented here, we conclude that the identification of defendant in this case cannot be said to have the same assurances of reliability that were found to exist in *Wharton* that would justify the summary denial of a hearing pursuant to CPL 710.60 (*see People v Newball*, 76 NY2d 587, 592).  We therefore hold the case, reserve decision, and remit the matter to County Court for a hearing pursuant to CPL 710.60 (4) to test the reliability of the People's identification testimony.

All concur except LINDLEY, J., who concurs in the result in the following memorandum:  Although I concur in the result reached by the majority, I respectfully disagree in part with its rationale.  I agree with the majority that County Court erred in summarily denying defendant's motion to suppress the undercover officer's identification.  As the Court of Appeals has made clear (*see People v Boyer*, 6 NY3d 427, 431-432), there are only two types of confirmatory identifications that dispense with the need for a *Wade* hearing:  (1) where the witness knows the defendant so well he or she is impervious to suggestiveness by the police (*see People v Rodriguez*, 79 NY2d 445, 453); and (2) where an undercover officer who participates in a buy-and-bust operation identifies the suspect shortly after the purchase to ensure that "an innocent person was not being detained by reason of a mistaken arrest" (*People v Wharton*, 74 NY2d 921, 923).  Here, the undercover officer did not know defendant prior to the transaction, and his identification of defendant therefore cannot be deemed confirmatory under *Rodriguez*.  Moreover, because the undercover officer was not involved in defendant's arrest, his prior identification of defendant was not confirmatory under *Wharton.*  As the majority aptly notes, "[u]nlike the typical 'buy and bust' operation with a postarrest station house identification, the undercover officer made no effort to 'assure himself that [the Syracuse Police Department] had arrested the man he intended' (*People v Morales*, 37 NY2d 262, 271)."  It thus follows that the court erred in determining that the identification was confirmatory as a matter of law, and a *Wade* hearing should be conducted.

I respectfully disagree with the majority, however, that defendant is entitled to a *Wade* hearing in order "to test the *reliability*" of the undercover officer's identification.  "The accuracy of an eyewitness identification presents an issue of fact for jury resolution and *may not be determined on a motion to suppress*" (*People v Dukes*, 97 AD2d 445, 445 [emphasis added]; *see People v Ross*, 288 AD2d 138, 138, *lv denied* 98 NY2d 655).  In my view, there is no basis to suppress identification testimony in the absence of evidence that the identification is tainted by unduly suggestive police

procedures, and concerns about the reliability of an identification—apart from alleged improper suggestiveness—go to the weight of the evidence, not its admissibility (*see People v Gilmore*, 135 AD2d 828, 828, *lv denied* 71 NY2d 896). Thus, a suppression court is not required to make "a threshold inquiry into the reliability of . . . identification testimony" (*People v Reeves*, 120 AD2d 621, 622, *lv denied* 69 NY2d 715).

Indeed, there are many cases where a witness's identification of a defendant may be of questionable reliability, such as where the witness was under the influence of drugs or alcohol when he or she made the identification, where the witness has an extensive criminal record and has proven to be less than trustworthy, or where a witness has poor eyesight or a faulty memory. Would we suppress the identification testimony of those witnesses in the absence of evidence that they were influenced by unduly suggestive police procedures? I do not think that we would or should. As noted, the rule excluding improper pretrial identifications is "designed to reduce the risk that the wrong person will be convicted *as a result of* suggestive identification procedures employed by the police" (*People v Adams*, 53 NY2d 241, 251 [emphasis added]), not to ensure that trial witnesses give accurate identification testimony.

The majority cites *People v Mato* (83 NY2d 406, 410) for the proposition that a defendant is entitled to a suppression hearing to test the reliability of an undercover officer's identification. Although the Court of Appeals in *Mato* referred generally to concerns about the "reliability" of the undercover officer's identifications of the defendant in that case, the Court made clear that it was concerned about the "suggestiveness" of the showup identifications, which occurred while the defendant was in handcuffs standing in front of the building where the drug transaction took place and then again at the police station after defendant was arrested. I do not read *Mato* as permitting a defendant to make a pretrial motion to challenge the reliability of an identification on grounds other than undue suggestiveness. Indeed, such a rule would appear to be inconsistent with *People v Marte* (12 NY3d 583, *cert denied* 559 US 941), where a unanimous Court of Appeals clarified that suppression is warranted *only* when an identification is tainted by suggestive procedures used by the police (*see id.* at 586-590). "Where no one in law enforcement is the source of the problem [relating to a possible misidentification]," the Court explained, there is no basis to suppress identification testimony, and concerns about reliability of an identification are for the trier of fact to consider (*id.* at 589).

Entered: June 10, 2016

Frances E. Cafarell
Clerk of the Court