People v Johnson (2019 NY Slip Op 03847)





People v Johnson


2019 NY Slip Op 03847


Decided on May 16, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 16, 2019

109503

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
ISAIAH JOHNSON, Appellant.

Calendar Date: March 21, 2019

Before: Garry, P.J., Clark, Mulvey, Devine and Rumsey, JJ.


Carolyn B. George, Albany, for appellant.
Letitia James, Attorney General, New York City (Jodi A. Danzig of counsel), for respondent.



MEMORANDUM AND ORDER
Garry, P.J.
Appeal from a judgment of the Supreme Court (Breslin, J.), rendered May 4, 2017 in Albany County, upon a verdict convicting defendant of the crimes of conspiracy in the second degree, attempted criminal possession of a controlled substance in the third degree and attempted criminal possession of a controlled substance in the fourth degree.
After an investigation by the Attorney General's Organized Crime Task Force (hereinafter the task force), defendant and 20 others were charged in a 263-count indictment with crimes related to the possession and sale of illegal narcotics. Specifically, defendant was charged with conspiracy in the second degree, attempted criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and attempted criminal possession of a controlled substance in the fourth degree [FN1]. Defendant waived Wade and Rodriguez hearings. Following a jury trial, he was acquitted of criminal possession of a controlled substance in the third degree and convicted of the remaining charges. Supreme Court sentenced him to a prison term of 11 to 22 years on the conviction for conspiracy in the second degree and to lesser concurrent terms on the remaining convictions. Defendant appeals.
Defendant contends that his convictions for attempted criminal possession of a controlled substance in the third and fourth degrees are against the weight of the evidence in that the People did not prove that he attempted to possess and sell illegal drugs and, with reference to the charge of criminal possession of a controlled substance in the fourth degree, did not prove the weight of the controlled substance. He further asserts that his conviction for conspiracy in the [*2]second degree is against the weight of the evidence because the People failed to prove that he committed an overt act in furtherance of the conspiracy [FN2]. We reject these claims.
The People's evidence established that, in late 2015, the task force obtained eavesdropping warrants to intercept and record cell phone communications relating to the criminal possession and sale of controlled substances by several individuals, including Joseph Rozier, who is defendant's half brother. Defendant became an additional target of the investigation when suspicious calls and texts were intercepted between Rozier's phone and defendant's phone. The evidence at trial consisted primarily of recorded communications in which the People claimed that defendant and Rozier used coded language to plan and discuss various drug transactions. A task force investigator with experience and training in narcotics investigations testified that many terms that appeared in the intercepted communications were typical of terminology commonly used by drug traffickers, such as certain words used to mean cocaine and crack cocaine. The investigator's testimony as to the coded terminology was confirmed by witnesses who described themselves as drug users and who were participants in some of Rozier's recorded communications. In addition to communications between Rozier and defendant, the People also submitted numerous communications between Rozier and others, asserting that they demonstrated that Rozier regularly used the same coded language that appeared in his communications with defendant to discuss drug transactions.
The investigator testified that defendant was initially identified as a target of the investigation based upon his telephone number. Several witnesses testified that defendant had given them the telephone number that appeared in the recordings as his own, including two police officers who had pulled him over in traffic stops and a representative of his employer, who stated that defendant provided that number on his employment application. The investigator also described various references in the intercepted communications that tended to identify defendant, including a conversation between Rozier and a female who the People asserted was the mother of defendant and Rozier, and who made identifying references to defendant while using defendant's phone. Finally, defendant's voice was identified by a City of Albany Police Department detective who testified that he was familiar with defendant's appearance and voice because he had spent many years as a foot patrol officer in the neighborhood where defendant lived as a child, had known defendant for more than 10 years as an adult, and had had approximately 50 conversations with him, including one within a week before testifying. This detective made an in-court identification of defendant and identified his voice on several recordings that were played for the jury.
With specific reference to defendant's convictions for attempted criminal possession of a controlled substance in the third and fourth degrees, the People sought to prove that defendant attempted to possess cocaine with the intent to sell it (see Penal Law §§ 110.00, 220.16 [1]) and attempted to possess cocaine with an aggregate weight of 3.5 grams or more (see Penal Law §§ 110.00, 220.09 [1]) by submitting and playing for the jury a sequence of text messages and phone conversations between defendant and Rozier that took place on January 7, 2016. The investigator testified as to his interpretation of the coded statements in these communications, opining that defendant told Rozier that he needed 10 grams of crack cocaine to resell to a specific customer, and that defendant intended to deliver the cocaine to the customer on a certain street in the City of Albany. Rozier responded that he had only six grams of the drug, and he and defendant agreed that defendant would bring baking soda to Rozier, which Rozier would use to [*3]raise the weight of the substance to 10 grams. Rozier asked defendant whether he was going to their mother's house and whether he could obtain baking soda from their mother, and defendant responded, "I'm about to go over there." Defendant and Rozier then exchanged several communications indicating that they were about to arrive or had arrived at the meeting place. The People introduced cell tower transmission maps indicating that, while these communications were taking place, Rozier was moving through the City of Albany toward his mother's address, located in an area where the trial evidence revealed that Rozier often met drug customers.
We reject defendant's contention that his attempted criminal possession convictions are against the weight of the evidence because the substance that defendant allegedly sought to acquire from Rozier in these communications was never found or subjected to scientific analysis, so that the People failed to prove that it was, in fact, cocaine. Defendant was not convicted of criminal possession of a controlled substance, for which "some additional evidence establishing the existence of [the controlled substance]" in addition to intercepted communications would have been required (People v Martin, 81 AD3d 1178, 1179 [2011], lv denied 17 NY3d 819 [2011]; see People v Williams, 150 AD3d 1315, 1318 [2017], lv denied 30 NY3d 984 [2017]). Defendant's convictions were for attempted criminal possession of a controlled substance in the third and fourth degrees, and "the existence of a controlled substance is not an element of [those] crime[s]" (People v Brooks, 127 AD3d 1407, 1408 n 2 [2015]; see Penal Law §§ 110.00, 220.16 [1]). Instead, the People were required to prove that defendant intended to commit the crimes of criminal possession of a controlled substance in the third and fourth degrees and that he "committed an act or acts that carried the project forward within dangerous proximity to the criminal end to be attained" — requirements that were satisfied by the People's evidence (People v Warren, 66 NY2d 831, 832 [1985]; see People v Rosica, 199 AD2d 773, 775 [1993], lv denied 83 NY2d 876 [1994]; see also People v Jackson, 121 AD3d 1185, 1188-1189 [2014], lv denied 25 NY3d 1202 [2015]).[FN3]
Defendant's claim that the People failed to prove the weight of the cocaine that he attempted to possess is similarly premised upon the mistaken theory that the People were required to establish the actual existence of cocaine in the required quantity. For the reasons discussed above, and in view of the intercepted communications revealing that defendant intended to acquire at least six grams of crack cocaine from Rozier and took actions that, at minimum, brought him "dangerously near" to doing so, this assertion is without merit (People v Kassebaum, 95 NY2d 611, 618 [2001] [internal quotation marks and citations omitted]; see Penal Law §§ 110.00, 220.09 [1]).
As for the conviction for conspiracy in the second degree, our review of the indictment does not support defendant's claim that the People were required to prove the commission of one of the listed class A felonies as an overt act in furtherance of the conspiracy (see Penal Law §§ 105.15, 105.20). "[Such an] overt act must be an independent act that tends to carry out the conspiracy, but need not necessarily be the object of the crime" (People v Ribowsky, 77 NY2d 284, 293 [1991]; accord People v Arroyo, 93 NY2d 990, 992 [1999]). Here, the indictment alleged that defendant and the other alleged conspirators committed 10 specific overt acts. One of these was a charge that, on January 7, 2016, defendant committed an overt act by telling Rozier that he had a customer waiting and asking Rozier to provide crack cocaine and baking soda — that is, the same actions that formed the basis of defendant's convictions for attempted criminal possession of a controlled substance in the third and fourth degrees, and that the jury found beyond a reasonable doubt that defendant had committed. Thus, the People alleged and [*4]proved the requisite overt act in furtherance of the conspiracy (see People v Portis, 129 AD3d 1300, 1302 [2015], lvs denied 26 NY3d 1088, 1091 [2015]; People v Weaver, 157 AD2d 983, 984-985 [1990], lv denied 76 NY2d 744 [1990]).
Had the jury declined to credit the People's evidence as to the meaning of the coded terminology in the intercepted communications, a different verdict would not have been unreasonable; thus, this Court "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]). Viewing the evidence in a neutral light and deferring to the jury's "opportunity to view the witnesses, hear the testimony and observe demeanor," we are satisfied that defendant's convictions are supported by the weight of the evidence (People v Romero, 7 NY3d 633, 644 [2006] [internal quotation marks and citation omitted]).
Defendant's contention that Supreme Court erred in failing to suppress the intercepted communications based upon alleged deficiencies in the eavesdropping warrant and in related procedures of the task force is unpreserved, as it was raised for the first time on this appeal (see People v Smith, 145 AD3d 1631, 1632 [2016], lv denied 29 NY3d 1086 [2017]; see also People v Brooks, 155 AD3d 1429, 1430 n [2017], lvs denied 31 NY3d 981, 985 [2018]). In any event, if the issue had been properly before us, we would not have found that task force investigators failed to conduct the eavesdropping operation "in such a way as to minimize the interception of communications or the making of observations not otherwise subject to eavesdropping" (CPL 700.30 [7]; see People v Floyd, 41 NY2d 245, 251-253 [1976]). Likewise, if defendant's claim that the warrant should have required progress reports to the issuing judge had been preserved, we would not have found that suppression was required "in light of the strong evidentiary showing that a reasonable and successful effort to minimize was made" (People v Floyd, 41 NY2d at 253; see CPL 700.50 [1]).
Finally, defendant contends that his counsel's waiver of a Rodriguez hearing deprived him of meaningful representation, as — in defendant's estimation — the People would have been unable to demonstrate at such hearing that the detective's identification of his voice was confirmatory, and the identification would have been suppressed. In this regard, a Wade hearing testing the reliability of an out-of-court identification "may be dispensed with where the [identifying] witness knows the defendant so well that police suggestiveness is not a concern" (People v Coleman, 306 AD2d 549, 550 [2003]; see People v Rodriguez, 79 NY2d 445, 449-450 [1992]; People v Carter, 57 AD3d 1017, 1017-1018 [2008], lvs denied 12 NY3d 781 [2009]). At a Rodriguez hearing — conducted to determine whether such a relationship exists — the People bear the burden of proving that an identification is confirmatory based upon such factors as "the number of times the witness saw the defendant prior to the crime, the duration and nature of those encounters, time periods and setting of the viewings, time between the last viewing and the crime, and whether the two individuals had any conversations" (People v Coleman, 306 AD2d at 550; accord People v Casanova, 119 AD3d 976, 980 [2014]).
Here, a pretrial Rodriguez hearing was scheduled pertaining to certain visual identifications that did not include the voice identification now at issue, but the hearing was never conducted because defense counsel conceded that the visual identifications were confirmatory [FN4]. Thereafter, shortly before the trial commenced, the People notified Supreme Court and defense counsel by letter that, earlier that day, the detective had identified defendant's voice in several of the intercepted phone calls, and asserted that this voice identification was confirmatory based upon his long-standing familiarity with defendant. On the first day of trial, the prosecutor stated that the detective had known defendant for at least 10 years and had spoken to defendant 50 or more times. In response, defense counsel waived a Rodriguez hearing, [*5]acknowledging that the detective was very familiar with defendant, knew defendant personally, had spoken with him on multiple occasions and had arrested defendant in the past.
It is well established that "counsel will not be found to be ineffective on the basis that he or she failed to make an argument or motion that has little or no chance of success" (People v Thorpe, 141 AD3d 927, 935 [2016], lv denied 28 NY3d 1031 [2016]; see People v Pratt, 162 AD3d 1202, 1203 [2018], lv denied 32 NY3d 940 [2018]). The undisputed evidence fully established that the detective was "sufficiently well-acquainted with defendant to make a misidentification unlikely" (People v Carter, 57 AD3d at 1018). Thus, there is little or no chance that a Rodriguez hearing would have led to a determination that the detective's identification was not confirmatory, and defendant has not shown that he did not receive meaningful representation (see People v Pichardo, 160 AD3d 1044, 1049 [2018], lv denied 31 NY3d 1151 [2018]).
Clark, Mulvey, Devine and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The indictment was redacted for defendant's trial to include only the charges that pertained directly to him.

Footnote 2: To the extent that defendant also asserts that his convictions were not supported by legally sufficient evidence, his arguments were only partially preserved by his trial motion to dismiss, in which defendant argued that the People did not prove that the substances he had allegedly attempted to possess were illegal drugs, but did not otherwise specifically raise the claims that he now asserts (see generally People v Van Alphen, 167 AD3d 1076, 1077 [2018], lv denied 32 NY3d 1210 [2019]). Nevertheless, "as part of our weight of the evidence review, we necessarily consider whether all of the elements of the charged crimes were proven beyond a reasonable doubt" (People v Hackett, 167 AD3d 1090, 1091 [2018] [internal quotation marks and citations omitted]; see People v Danielson, 9 NY3d 342, 348-349 [2007]).

Footnote 3: The People's argument that defendant intended to acquire crack cocaine from Rozier was also supported by the testimony of another witness who testified that he bought cocaine from Rozier on that same date, that the cocaine he purchased was genuine and that he regularly bought drugs from Rozier and had never found that they were not genuine. The People further offered proof that Rozier was an established dealer of cocaine, including evidence that police seized more than 19 grams of crack cocaine from Rozier's apartment and nearly seven grams from his person when Rozier was arrested in April 2016.

Footnote 4: Defendant does not contend on appeal that defense counsel erred in making this concession.