THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN FISHER, Appellant. [988 NYS2d 187]—

Judgment, Supreme Court, New York County (Daniel P. FitzGerald, J.), rendered March 14, 2011, convicting defendant, upon his plea of guilty, of hindering prosecution in the second degree, and sentencing him, as a second felony offender, to a term of 1½ to 3 years, affirmed.

This appeal stems from defendant's 2009 indictment for hindering prosecution in the first degree and criminal possession of a weapon in the third degree. The hindering prosecution count alleged that defendant "rendered criminal assistance to Clovis Roche who had committed a class A felony, to wit, Murder in the Second Degree, knowing and believing that such person had engaged in conduct constituting Murder in the Second Degree." By the same indictment, codefendant Roche was charged with murder in the second degree and two counts of criminal possession of a weapon in the second degree.

In sum and substance, the People alleged that on January 28, 2009, Rodney Lewis, and three other men, including Lewis's brother, Richard Lamar, went to Roche's apartment to retrieve

a television that belonged to Lewis's cousin. Roche did not want Lewis to take the television and a fight ensued, during which Roche shot Lewis with a gun he had earlier received from defendant. After the shooting, defendant took the gun, which was never recovered, and he and Roche fled the apartment. Lewis died at the hospital a short time later.

On July 16, 2010, on the eve of trial, defendant pleaded guilty to the lesser included offense of hindering prosecution in the second degree, in exchange for a promised sentence of 1½ to 3 years. Notably, before pleading guilty, defendant received *Brady* material that consisted of notes from Detectives Melino and Purcell indicating that Lamar had told Melino and Purcell that he had not witnessed the shooting because he was on a different floor smoking a cigarette. In pleading guilty, defendant admitted that he "rendered criminal assistance to Clovis Roche who had committed a class A felony, to wit, murder in the second degree, knowing and believing that such person had engaged in conduct constituting murder in the second degree."

Roche proceeded to a trial at which Lamar, the victim's brother, was the prosecution's main witness. Lamar testified that he saw Roche shoot Lewis and that he told the detectives so when interviewed after the shooting. He denied telling the detectives that he did not actually see the shooting. Detective Melino testified that Lamar had told her that he did not see the shooting.

On the evening after Lamar and Melino testified, an Assistant District Attorney discovered handwritten notes he had taken during an interview with Lamar. The People disclosed that they had unintentionally failed to turn over these notes to defendant. The notes consisted of a series of "blurbs" summarizing statements by Lamar during his interview with the prosecutor. For example the notes stated that "1 wk b/f" someone "had been robbed" and that Roche "had been hit in head." The notes also said, "crack head at door," "guys from E. River rushed in," and that Lamar saw Roche "bleeding from."

With regard to the January 28, 2009 shooting incident that resulted in Lewis's death, the notes indicated that Lamar was "unsure," "saw punch thrown," and that when Roche "start[ed] pulling out gun," Lewis "grabbed gun." After reviewing the notes, the court found—and defense counsel and the prosecutor agreed—that the notes constituted *Rosario* material as to Roche, but not *Brady* material.

Roche testified in his own behalf that he did not intend to shoot Lewis, but that he shot him by accident as the pair struggled over the gun. Even though Roche did not claim that

he had shot Lewis in self-defense, defense counsel asked the court, in the alternative, to charge the jury on self-defense, and the court did so. On or about July 27, 2010, before defendant's sentencing had been scheduled, the jury acquitted Roche of all felony charges, and convicted him of criminal possession of a weapon in the fourth degree.

In August 2010, after Roche's acquittal, but prior to defendant's sentencing, defendant moved to withdraw his guilty plea pursuant to CPL 220.60 (3). He argued that the People's failure to provide him with the belatedly disclosed notes, which reflected the Assistant District Attorney's interview with Lamar, was a *Brady* violation that undermined the voluntariness of his plea. In the alternative, defendant argued that he should be allowed to withdraw his plea based on Roche's acquittal of the felony charges. Defendant reasoned that because the crime of hindering prosecution "require[d] that the principal be guilty of a felony," Roche's acquittal rendered him innocent of hindering prosecution. The court denied defendant's motion to withdraw his plea, explaining that the notes did not constitute *Brady* material, and that Roche's acquittal of second-degree murder did not present a legal impediment to defendant's guilty plea.

We find that the court properly exercised its discretion in denying defendant's motion to withdraw his guilty plea (*see generally People v Frederick*, 45 NY2d 520, 525 [1978]). "The established rule is that a guilty plea will be upheld as valid if it was entered voluntarily, knowingly and intelligently" (*People v Fiumefreddo*, 82 NY2d 536, 543 [1993]). "A defendant is not entitled to withdraw his guilty plea based on a subsequent unsupported claim of innocence, where the guilty plea was voluntarily made with the advice of counsel following an appraisal of all the relevant factors" (*People v Dixon*, 29 NY2d 55, 57 [1971]).

Here, the plea colloquy reveals that defendant knowingly and voluntarily admitted the factual allegations of the crime, namely that he rendered criminal assistance to Clovis Roche while knowing and believing that Roche had engaged in conduct constituting murder in the second degree. At no time, during his allocution or at any other time, did defendant make any protest of innocence.

Defendant's subsequent claim of innocence arising out of co-defendant Roche's acquittal at trial must be rejected because a person may validly plead guilty to hindering prosecution in the first degree without knowing whether or not the assisted person will be convicted of the underlying felony at the subsequent trial. Indeed, as the Court of Appeals has noted, the hindering prosecution statute does not require proof that the assisted

person was ever arrested or convicted of the underlying felony (*see People v Chico*, 90 NY2d 585, 588 [1997]).

Nor do we find any merit to defendant's allegations that the belatedly disclosed notes would have affected his decision to plead guilty rather than proceed to trial. We reject defendant's argument that the previously undisclosed witness interview notes tended to exculpate Roche, and were thus exculpatory of defendant because of the requirement of proof of the assisted person's commission of an underlying felony. On the contrary, we conclude that these notes had little or no exculpatory value, and that they were essentially inculpatory of Roche. Accordingly, we find that there was no *Brady* violation, and that in any event, the nondisclosure could not have materially affected defendant's decision to plead guilty (*see People v Martin*, 240 AD2d 5, 8-9 [1st Dept 1998], *lv denied* 92 NY2d 856 [1998]), notwithstanding his assertion to the contrary. Concur—Sweeny, J.P., Renwick, Freedman and Richter, JJ. Saxe, J., concurs in result only.