People v Colon (2021 NY Slip Op 04294)





People v Colon


2021 NY Slip Op 04294


Decided on July 9, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 9, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, CURRAN, AND DEJOSEPH, JJ.


277 KA 14-01827

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
GEORGE COLON, DEFENDANT-APPELLANT. 






FRANK MELLACE, II, ROME, FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (KENNETH H. TYLER, JR., OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Onondaga County (John J. Brunetti, A.J.), rendered October 6, 2014. The judgment convicted defendant upon a jury verdict of murder in the second degree and criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by directing that the sentence imposed on count two of the indictment shall run concurrently with the sentence imposed on count one of the indictment, and as modified the judgment is affirmed.
Memorandum: Defendant appeals from a judgment convicting him after a jury trial of murder in the second degree (Penal Law § 125.25 [1]) and criminal possession of a weapon in the second degree (§ 265.03 [3]) in connection with an incident involving two shooters that caused the death of the victim. Defendant contends that Supreme Court erred in refusing to suppress identification testimony by two of the People's witnesses. One of those witnesses (witness one) observed the shooting and thereafter identified the two shooters by their clothing and physical size, as depicted in a surveillance video. At no time did witness one identify any person in the video as either defendant or the codefendant. The other of those witnesses (witness two), who had a long-term relationship with the codefendant, thereafter identified defendant and the codefendant as the men depicted on the surveillance video. After a pretrial hearing concerning the identifications made by, inter alia, those two witnesses, the court determined with respect to witness one that, inasmuch as that witness did not specifically identify defendant as one of the shooters—indeed, it was undisputed at the hearing that witness one never saw the shooters' faces—CPL 710.30 (1) (b) did not apply, and a Wade hearing with respect to that witness was unnecessary. With respect to witness two, the court concluded after the hearing that the identification of defendant was merely confirmatory. On appeal, defendant contends that the court erred in refusing to conduct a Wade hearing with respect to witness one's identification, and erred in concluding that the identification by witness two was merely confirmatory. We conclude that defendant did not preserve his contention with respect to witness one because he did not object to the court's statement that CPL 710.30 (1) (b) did not apply and did not specifically object to the court's failure to conduct a Wade hearing with respect to that witness (see generally CPL 470.05 [2]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
We also reject defendant's contention that the court erred in determining that the identification of defendant by witness two was confirmatory. "A court's invocation of the 'confirmatory identification' exception is . . . tantamount to a conclusion that, as a matter of law, the witness is so familiar with the defendant that there is 'little or no risk' that police suggestion could lead to a misidentification" (People v Rodriguez, 79 NY2d 445, 450 [1992]). "This type of confirmatory identification exception to the notice and hearing requirements for suggestive pretrial identification 'may be confidently applied where the [identifying witness is a] family member[], friend[] or acquaintance[] or [has] lived [with the defendant] for a time' " (People v [*2]Sanchez, 75 AD3d 911, 912 [3d Dept 2010], lv denied 15 NY3d 895 [2010], quoting Rodriguez, 79 NY2d at 450). "[T]he People are not obligated to call the identifying witness at a Rodriguez hearing" (People v Graham, 283 AD2d 885, 887 [3d Dept 2001], lv denied 96 NY2d 940 [2001]). Here, the People met their burden of establishing that the identification of defendant by witness two was confirmatory by presenting the testimony of a police detective, which established that defendant and witness two, through her relationship with the codefendant, had known each other for at least a year and had met on several occasions (see People v Gambale, 158 AD3d 1051, 1052 [4th Dept 2018], lv denied 31 NY3d 1081 [2018]; People v Allen, 231 AD2d 900, 901 [4th Dept 1996], lv denied 89 NY2d 918 [1996]).
Defendant also contends that the People violated their obligation under Brady v Maryland (373 US 83 [1963]) to disclose certain evidence that defendant alleged supported his third-party culpability defense—i.e., that the victim was potentially killed by someone other than defendant or the codefendant in retaliation for an armed robbery that the victim had allegedly committed minutes before the shooting (see generally People v Vilardi, 76 NY2d 67, 73 [1990]). In particular, defendant sought, inter alia, the police reports concerning the alleged robbery and the identity of the confidential informant (informant) referenced in those reports. After conducting a proceeding with the informant outside of the presence of defendant and defense counsel, the court determined, inter alia, that the informant did not possess exculpatory evidence that should be disclosed to defendant. Having reviewed the sealed transcripts pertaining to that proceeding, we conclude that the court properly determined that the People were not required under Brady to disclose any further information about the informant or the informant's account of the alleged robbery, inasmuch as the informant's account was not exculpatory to defendant (see People v Fisher, 119 AD3d 426, 429 [1st Dept 2014], affd 28 NY3d 717 [2017]; People v Hotaling, 135 AD3d 1171, 1173 [3d Dept 2016]; see generally People v Andre W., 44 NY2d 179, 185 [1978]).
We also reject defendant's contention that the court erred in admitting, under the dying declaration exception to the hearsay rule (see generally People v Nieves, 67 NY2d 125, 131-133 [1986]), testimony from a police officer stating that the victim identified defendant as the person who shot him. The People presented evidence establishing that, when the officer arrived at the scene shortly after the shooting, he encountered the victim, who was bleeding from his nose and mouth, was having trouble breathing, and had a gunshot wound to the center of his chest. The officer asked the victim who did that to him, and twice the victim identified defendant as the shooter. The victim thereafter asked the officer to "tell my mother I love her," before he became unresponsive and died. Contrary to defendant's contention, we conclude that the People laid a proper foundation for the testimony by establishing, inter alia, that the victim spoke "under a sense of impending death, with no hope of recovery" (Nieves, 67 NY2d at 132; see also People v Elder, 108 AD3d 1117, 1117-1118 [4th Dept 2013], lv denied 22 NY3d 1087 [2014]; People v Walsh, 222 AD2d 735, 737 [3d Dept 1995], lv denied 88 NY2d 855 [1996]).
We also reject defendant's contention that the admission of the victim's dying declaration violated the Confrontation Clause of the Sixth Amendment to the United States Constitution (see US Const 6th, 14th Amends). We agree with defendant that the victim's declaration was a "[t]estimonial statement[] of [a] witness[ ] absent from trial" (Crawford v Washington, 541 US 36, 59 [2004]) because the testifying officer's question to the victim about the shooter "was designed only to learn the identity of the perpetrator," not to resolve any then-existing emergency (People v Clay, 88 AD3d 14, 23 [2d Dept 2011], lv denied 17 NY3d 952 [2011]; cf. People v Houston, 142 AD3d 1397, 1398 [4th Dept 2016], lv denied 28 NY3d 1146 [2017]). Nonetheless, we conclude that the court's admission of the dying declaration did not violate the Confrontation Clause of the Sixth Amendment inasmuch as " 'the Sixth Amendment incorporates an exception for testimonial dying declarations,' " which is consistent with the recognition at common law, at the time of the ratification of that amendment, of such an exception to the right of confrontation (Clay, 88 AD3d at 27, quoting Crawford, 541 US at 56 n 6; see also King v Woodcock, 168 Eng Rep 352, 352-353, 1 Leach 500, 501 [1789]).
To the extent that defendant contends that the Confrontation Clause of the New York Constitution (NY Const, art I, § 6) provides greater protection than the Confrontation Clause of the United States Constitution with respect to the admission of testimonial dying declarations, we conclude that defendant's contention is not preserved for our review inasmuch as defendant failed to raise that contention before the trial court (see CPL 470.05 [2]), and we decline to exercise our power to review the issue as a matter of discretion in the interest of justice (see CPL [*3]470.15 [6] [a]).
Defendant's contention that the court should have followed the pattern Criminal Jury Instructions when instructing the jury with respect to the dying declaration testimony is not preserved for our review inasmuch as defendant did not object or take any exception to the instructions that were given (see CPL 470.05 [2]; People v Clark, 142 AD3d 1339, 1340 [4th Dept 2016], lv denied 28 NY3d 1143 [2017]). To the extent that defendant also contends that he was denied effective assistance of counsel based on defense counsel's failure to object to the dying declaration jury instructions, we conclude that defendant did not meet his burden of showing " 'the absence of strategic or other legitimate explanations for counsel's challenged [in]action[]' " (People v Lopez-Mendoza, 33 NY3d 565, 572 [2019]). Indeed, defense counsel may have had a strategic reason for not objecting to the given instruction inasmuch as "the language of the standard charge might not have been entirely helpful to the defense"—i.e., it would have been inconsistent with defense counsel's argument on summation (People v Butler, 190 AD3d 464, 465 [1st Dept 2021], lv denied 36 NY3d 1095 [2021]).
Finally, as defendant contends and the People correctly concede, the court erred in directing that the sentence imposed on the conviction of criminal possession of a weapon in the second degree run consecutively to the sentence imposed on the conviction of murder in the second degree. Here, " '[n]o evidence was adduced at trial to establish that the defendant's possession of a gun was separate and distinct from his shooting of the victim' " (People v Ross, 164 AD3d 528, 529 [2d Dept 2018], lv denied 32 NY3d 1067 [2018]; see People v Tripp, 177 AD3d 1409, 1411 [4th Dept 2019], lv denied 34 NY3d 1133 [2020]). We therefore modify the judgment accordingly.
Entered: July 9, 2021
Mark W. Bennett
Clerk of the Court